**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Harold G. MILLER,**
**Defendant–Appellant.**

**No. 89–6067.**

United States Court of Appeals,
Sixth Circuit.

Argued April 13, 1990.

Decided Aug. 10, 1990.

**1322**

the period of the conspiracy as relevant conduct, and further contends that the district court incorrectly enhanced his guideline sentence based upon the erroneous determination that he possessed a firearm during the commission of a drug offense. Finding no merit in any of these arguments, we affirm.

### I.

An investigation of defendant Miller that began in March of 1988 resulted in three separate sales of cocaine hydrochloride by the defendant to an undercover informant. On each occasion, the informant wore a recording device, thereby generating a tape of each transaction. The investigation culminated in the arrest of defendant Miller on October 24, 1988. On the date of his arrest, the defendant, acting in a *pro se* capacity after being advised of his rights and waiving his right to counsel, arranged a plea agreement with the government that required the defendant to forgo his right to an indictment and plead guilty to conspiring to distribute 1.25 ounces of cocaine between March 1, 1988, and May 11, 1988. The defendant also consented to furnish truthful testimony for the government and serve as an undercover informant upon request.[1] In exchange, the government promised not to prosecute Miller further for cocaine distribution so long as he "abide[d] by the terms of th[e] agreement."

Michael Winck, David Dake (argued), Asst. U.S. Attys., Knoxville, Tenn., for plaintiff-appellee.

Ronald P. Smith (Argued), Knoxville, Tenn., for defendant-appellant.

Before MERRITT, Chief Judge; MARTIN and GUY, Circuit Judges.

RALPH B. GUY, Circuit Judge.

Defendant, Harold Miller, who pleaded guilty to conspiring to distribute 1.25 ounces of cocaine hydrochloride in violation of 21 U.S.C. §§ 841 and 846, appeals the 60–month sentence imposed upon him under the Sentencing Guidelines. Specifically, the defendant argues that his waiver of the right to counsel was defective, and that statements he made to his probation officer should not have been used to establish the amount of cocaine that he distributed. In addition, the defendant challenges the district court's inclusion of drug sales outside

On March 17, 1989, the defendant appeared before the district court, signed a waiver of counsel form, and entered a guilty plea to a single-count information charging him with conspiring to distribute 1.25 ounces of cocaine hydrochloride "between March 1, 1988, and May 11, 1988[.]" Before accepting the defendant's plea, the district judge engaged in a colloquy with the defendant to ascertain whether the defendant understood his right to counsel and the perils of proceeding *pro se*. The district judge explained the charge, the potential penalties, and the fact that the Sentencing Guidelines would dictate the range of

---

1. By all accounts, the defendant failed to satisfy this obligation. Nevertheless, neither party sought to rescind the plea agreement based on the defendant's lack of cooperation.

the resulting sentence. After the defendant expressed his desire to proceed in his own defense, the district court explicitly found "that the defendant has knowingly and voluntarily waived his right to counsel." The waiver of counsel form signed by the defendant at that point in the proceedings memorialized the defendant's stated intention.

Once the defendant had waived his right to counsel, the district court proceeded to advise the defendant of his rights and take his guilty plea. Defendant Miller personally acknowledged the various rights enumerated by the district court, signed a form waiving his right to have the case submitted to the grand jury, and formally adopted the government's explanation of the conduct supporting the charge. The plea proceeding ended with the following comments from the district court:

> THE COURT: Mr. Winck will explain that to you and tell you where you need to go to see the probation officer. Now, that person is very helpful, Mr. Miller. He or she, as the case may be, is an officer of this Court and they'll be getting all the information from you concerning your past, what your problem was with this crime, and they'll submit that report to me and then I'll review that and use that, in part, in determining what sentence should be imposed. So be honest and candid with the probation officer, okay?
>
> A. Yes, sir.
>
> THE COURT: Because you will be working with that person for a long time and, as I say, those people can help you.
>
> A: Yes, sir.

During a meeting with his probation officer, defendant Miller revealed that he had purchased approximately one ounce of cocaine per week between February 1987 and October 1988. The defendant further explained to his probation officer that he typically used half of the cocaine that he bought, and sold the other half to support his habit. Proceeding from this disclosure, the probation officer calculated that the defendant had sold 1,169.5 grams of cocaine over a 20–month period. Accordingly, the probation officer used the 1,169.5 gram figure, rather than the 35.5 gram (1.25 ounce) figure charged in the information, to establish the base offense level in the defendant's presentence report. The impact of the 1,169.5 gram figure as reflected in the presentence report was substantial. Application of the 1,169.5 gram figure resulted in a base offense level of 26, see U.S.S.G. § 2D1.1(c)(9), which yielded a sentencing range of 63 to 78 months, see id. Ch. 5, Pt. A (Sentencing Table), whereas the 35.5 gram figure would have produced a base offense level of 14, see id. § 2D1.1(c)(15), and a sentencing range of 15 to 21 months. See id. Ch. 5, Pt. A (Sentencing Table). Upon learning of the probation officer's proposed sentencing range, the defendant sought and obtained appointed counsel to prepare for the sentencing hearing.

After counsel was appointed, the defendant filed a motion to disallow the use of information revealed to the probation officer in the calculation of the appropriate guideline sentence. The district court denied the motion as well as the defendant's subsequent motion for reconsideration. On August 8, 1989, the district court conducted a sentencing hearing. At the outset of the hearing, the defendant indicated through counsel that he affirmatively "elected to go forward with the plea under the information." The government then presented evidence that defendant Miller had engaged in at least one sale of cocaine with a pistol readily accessible on a nearby table. The defendant admitted ownership and possession of various guns, but argued that no weapon was present when any sale of cocaine occurred. The district court, characterizing the defendant's weekly cocaine sales revealed to the probation officer as "relevant conduct," see U.S.S.G. § 1B1.3, set the base offense level at 26. The court then added two points to the base offense level for possession of a weapon during the commission of the offense, see id. § 2D1.1(b)(1), and deducted two points for the defendant's acceptance of responsibility. See id. § 3E1.1. Arriving at a sentencing range of 63 to 78 months, the district court, sua sponte, departed downward to a

60–month sentence because there were "not any real aggravating factors in this case."

The defendant filed a timely notice of appeal; the government did not cross-appeal.[2] The defendant raises four assignments of error for our consideration. First, he alleges that the district court failed to obtain an effective waiver of his right to counsel. Second, he contends that his statements made to his probation officer cannot provide the basis for establishing his base offense level. Third, he asserts that the district court improperly characterized the information he provided to the probation officer as "relevant conduct" in setting his base offense level at 26. Finally, he argues that the district court erred in finding that he used a firearm in the course of committing the offense of conviction. We shall address these issues *seriatim.*

## II.

■ The Supreme Court's decision in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), clearly established that the sixth amendment "grants to the accused personally the right to make his defense" through self-representation. *Id.* at 819, 95 S.Ct. at 2533. Self-representation, however, must be undertaken only upon a showing "that an accused was offered counsel but intelligently and understandingly rejected the offer." *Carnley v. Cochran,* 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962); *accord United States v. Grosshans,* 821 F.2d 1247, 1250 (6th Cir.), *cert. denied,* 484 U.S. 987, 108 S.Ct. 506, 98 L.Ed.2d 505 (1987); *see also Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541. We have recognized the difficulties that district courts face when confronted with defendants who wish to waive their right to counsel, *see United States v. McDowell,* 814 F.2d 245, 248–49 (6th Cir.), *cert. denied,* 484 U.S. 980, 108 S.Ct. 478, 98 L.Ed.2d 492 (1987), and have "invoke[d] our supervisory powers to identify the nature of the inquiry to be made and the procedure to be followed ... in situations where an accused seeks to waive representation by counsel and proceed *pro se." Id.* at 250. Specifically, we adopted the "model inquiry ... set forth in 1 *Bench Book for United States District Judges* 1.02–2 (3d ed. 1986)[,]" *McDowell,* 814 F.2d at 250, mandated adherence to "the model inquiry or one covering the same substantive points," *id.,* and required a finding on the record of informed insistence upon self-representation as preconditions to a valid waiver of the right to counsel. *See id.*

In this case, we find that the district court substantially complied with the model inquiry adopted in *McDowell,* 814 F.2d at 250, and that the defendant therefore effectively waived his right to counsel. *See id.* at 252 (Engel, J., concurring) ("[T]he rule today, based upon our supervisory powers, requires substantial compliance and not literal adherence to the guidelines in the *Bench Book.*"). The model inquiry, which is set forth as an appendix to the *McDowell* opinion, *see id.* at 251–52, prescribes a battery of questions designed to ascertain the defendant's familiarity with the law, to warn the defendant of the gravity of the charges and the dangers of self-representation, and to determine whether the defendant's decision to waive counsel is voluntary. Here, the district court's searching inquiry touched upon all of the relevant considerations addressed by the model inquiry.[3] Accordingly, we find no merit in the defendant's contention that he did not

---

**2.** The government's failure to appeal precludes us from reviewing the district court's decision to depart downward from the 63 to 78–month guideline range. *Cf.* 18 U.S.C. § 3742(b) ("The Government, with the personal approval of the Attorney General or Solicitor General, *may* file a notice of appeal in the district court for review of an otherwise final sentence[.]" (emphasis added)). We note in passing, however, that the district court's stated rationale for departure does not appear to comport with the standard set forth in 18 U.S.C. § 3553(b). *See, e.g., Unit-*

*ed States v. Aguilar–Pena,* 887 F.2d 347, 349 (1st Cir.1989) ("Departure is permitted in those cases where idiosyncratic circumstances warrant individualization of sentence beyond that which is possible within the comparatively close-hewn parameters constructed by the guidelines.").

**3.** The discussion between the district court and the defendant proceeded as follows:

THE COURT: It's the understanding of this Court that you wish to proceed without an attorney in this matter; is that correct, sir?

effectively forsake his right to counsel before pleading guilty to the charge set forth in the single-count information.

■ Even assuming *arguendo* that the defendant did not effectively waive his right to counsel, his ratification of the plea agreement after he obtained appointed counsel supports his conviction under the plea agreement's terms. At the sentencing hearing, counsel for the defendant expressly stated that "[i]n my file there is a motion to withdraw the plea. Mr. Miller has asked that I not file that motion, but instead allow the court to go ahead with these proceedings." Similarly, in *United States v. Billington*, 844 F.2d 445 (7th Cir.1988), "the defendant not only ratified his initial guilty plea, but unequivocally refused to withdraw his plea of guilty [when] the court allowed him to reconsider his plea." *Id.* at 450. Here, as in *Billington*, the defendant's dissatisfaction with the sentence imposed under the plea agreement does not give rise to a viable claim of constitutional dimension. Defendant Miller's decision to abide by the terms of his plea agreement after he obtained counsel constitutes a waiver of any sixth amendment violation that may have preceded the appointment of counsel.

### III.

■ Defendant Miller challenges the district court's authority to consider statements he made to his probation officer on two grounds. First, he contends that Sentencing Guideline § 1B1.8(a) prohibits the use of such information for purposes of establishing the applicable guideline range. We disagree. According to section 1B1.-8(a):

> Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and the government agrees that self-incriminating information so provided will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

U.S.S.G. § 1B1.8(a). This section unquestionably forbids the government to influence the sentencing range by disclosing revelations made by a defendant in the course of cooperation as required by a plea agreement. *See, e.g., United States v. Shorteeth*, 887 F.2d 253, 255–57 (10th Cir. 1989); U.S.S.G. § 1B1.8, comment. (n. 1). Statements made to a probation officer, however, cannot be construed as information provided to the "government" within the meaning of section 1B1.8(a). *Cf. United States v. Perez–Franco*, 873 F.2d 455, 460–61 (1st Cir.1989) (Federal Rule of Evidence 410, which excludes "any statement

A: Yes, sir.

THE COURT: You understand that you have a right to have an attorney to represent you and that if you cannot financially afford an attorney, the Court will appoint an attorney for you and it won't cost you anything?

A: Yes, sir, I understand that, your Honor.

THE COURT: Do you want me to do that?

A: No, sir.

THE COURT: Have you ever represented yourself in any other matter?

A: No, sir.

THE COURT: In any other criminal action?

A: No, sir.

THE COURT: You realize, sir, that you are charged with conspiracy to distribute cocaine, as set out in this single count of the Information and you realize that if you plead guilty to this charge the Court may impose an assessment of $50.00 and could sentence you to as many as 20 years in prison and fine you as much as one million dollars; do you understand that?

A: Yes, your Honor.

THE COURT: And you realize the United States Sentencing Commission has issued sentencing guidelines that will affect your sentence if you plead guilty?

A: Yes, your Honor.

THE COURT: In light of the penalty involved that you might suffer if you plead guilty and in light of all the difficulties of representing yourself, is it still your desire to represent yourself and to give up your right to be represented by a lawyer?

A: Yes, your Honor.

THE COURT: Is your decision entirely voluntary on your part?

A: Yes, sir, it was, your Honor.

THE COURT: The Court finds that the defendant has knowingly and voluntarily waived his right to counsel. I will, therefore, permit him to represent himself.

made in the course of plea discussions with an attorney for the prosecuting authority," does not bar "statements made to a probation officer in preparation for a presentence report...."). As the Ninth Circuit recently explained, probation officers under the guideline system still operate on behalf of the court, not the prosecutorial arm of the government contemplated by section 1B1.8(a).[4] *See United States v. Belgard,* 894 F.2d 1092, 1096–97 (9th Cir.1990).

The defendant's second argument concerning statements made to the probation officer refers to the fifth amendment's protection against self-incrimination and invites this court to formulate prophylactic warnings presumably under our supervisory authority. Insofar as the defendant seeks redress for violation of his fifth amendment rights, the Supreme Court's decision in *Minnesota v. Murphy,* 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984), precludes the relief that he has requested. Under *Murphy,* the fifth amendment privilege against self-incrimination is not self-executing in the context of a meeting with a probation officer. *See id.* at 425, 104 S.Ct. at 1141. Consequently, "since [defendant Miller] revealed incriminating information instead of timely asserting his Fifth Amendment privilege, his disclosures were not compelled incriminations." *Id.* at 440, 104 S.Ct. at 1149. We likewise reject the defendant's suggestion that the guideline sentencing scheme warrants the creation of *Miranda*-type[5] prophylactic warnings to be administered prior to presentence meetings with probation officers. In *Baumann v. United States,* 692 F.2d 565 (9th Cir. 1982), the Ninth Circuit observed that *"Miranda* has never been applied, to our knowledge, to routine presentence interviews conducted for the benefit of a district judge in the exercise of his substantial discretion at sentencing. We see no reason to do so." *Id.* at 576. Defendant Miller claims that, with the advent of guideline sentencing and the concomitant restriction of district judges' sentencing discretion, the rationale supporting the Ninth Circuit's refusal to extend *Miranda* uniformly to presentence interviews has been undercut. We disagree. Under the guideline sentencing scheme, the district court must resolve factual disputes and, in doing so, remains at liberty to disregard information and recommendations included in the presentence report compiled by the probation officer. *See, e.g., Belgard,* 894 F.2d at 1097, 1099. We therefore find the pre-guideline logic of *Baumann* relevant to guideline sentencing. *Accord United States v. Rogers,* 899 F.2d 917, 921–24 (10th Cir.1990).

### IV.

The defendant's principal challenge to the district court's application of the guidelines focuses on the district court's conceptualization of "relevant conduct," which is discussed extensively in Sentencing Guideline § 1B1.3. Pursuant to section 1B1.3(a)(2), the base offense level "shall be determined on the basis of ... *all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction* ... solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts[.]"[6] *See* U.S.S.G. § 1B1.3(a)(2) (emphasis added). The commentary accompanying section 1B1.3 states that, "in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of

---

4. Our determination that the term "government" as employed in section 1B1.8(a) does not include probation officers obviates the need to consider the effect, if any, of the defendant's failure to provide the cooperation promised in his plea agreement. *See* U.S.S.G. § 1B1.8(b)(3) ("The provisions of subsection (a) shall not be applied to restrict the use of information in the event there is a breach of the cooperation agreement.").

5. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

6. Sentencing Guideline § 3D1.2(d), which deals with grouping of closely-related counts, requires grouping of counts "if the offense level is determined largely on the basis of ... the quantity of a substance involved[.]" Distribution of a controlled substance such as cocaine falls within the purview of section 3D1.2(d).

conduct or part of a common scheme or plan as the count of conviction." U.S.S.G. § 1B1.3, comment. (backg'd). Relying upon this language, the district court aggregated the total amount of cocaine admittedly sold by the defendant over a 20–month period to arrive at a base offense level of 26. The defendant asserts that the district court was constrained to rely upon the 35.5 gram and the three-month conspiracy figures charged in the count of conviction.

Our decision in *United States v. Sailes*, 872 F.2d 735 (6th Cir.1989), illustrates that, pursuant to section 1B1.3(a)(2), the entire quantity of cocaine attributable to a distribution enterprise must be used to establish the base offense level of a conspirator in the undertaking. *See id.* at 738–39. Indeed, in *United States v. Smith*, 887 F.2d 104 (6th Cir.1989), we determined that conduct charged in a count that was dismissed in accordance with a plea agreement should be considered in establishing the base offense level if such conduct related to the offense of conviction. *See id.* at 107–08. In the process of reaching this conclusion, we observed that consideration of "conduct for which the defendant was not convicted is consistent with preguidelines practice." *Id.* at 108 n. 5.

We addressed the impact of uncharged conduct, which is at issue here, in *United States v. Silverman*, 889 F.2d 1531 (6th Cir.1989), but resolved the case without direct reference to the "relevant conduct" provision of the guidelines. *See id.* at 1539. Instead, we refused to include uncharged conduct in the base offense level calculation because the defendant's plea agreement prohibited the government from "fil[ing] 'additional charges'" against the defendant. *See id.* We deduced that "[t]he effect of the findings by the district court may have been, at least indirectly, to take into account 'additional charges,' if not brought formally by the United States

Attorney then by the probation office or the law enforcement agents involved in the sentencing process." *Id.* In short, we viewed the inclusion of uncharged conduct in the total controlled substance figure used to set the base offense level as inconsistent with the terms of the defendant's plea agreement barring "additional charges."

Defendant Miller's plea agreement similarly guaranteed no further prosecution, but the government's promise to this effect was predicated upon the defendant's compliance with the terms of his plea agreement. Because both the defendant and the government agree that the defendant failed to fulfill his obligations under the plea agreement, the concern addressed in *Silverman* is not implicated here. Thus, we must deal directly with the question of whether uncharged conduct related to the offense of conviction can form the basis for the base offense level. The district court held that Sentencing Guideline § 1B1.3(a)(2) requires consideration of uncharged relevant conduct, and we agree. *See, e.g., United States v. Frederick*, 897 F.2d 490 (10th Cir.1990); *United States v. Mocciola*, 891 F.2d 13, 16 (1st Cir.1989); *United States v. Allen*, 886 F.2d 143, 145 (8th Cir.1989); *see also United States v. Vopravil*, 891 F.2d 155, 157 (7th Cir.1989); *but see United States v. Restrepo*, 883 F.2d 781, 786 (9th Cir.1989).[7] As the First Circuit explained, "whether uncharged drugs are part of a common scheme or plan is a factual finding we will disturb only if clearly erroneous." *Mocciola*, 891 F.2d at 16. In this case, we cannot say that the district court's inclusion of cocaine sold over a 20–month period as conduct related to the offense of conviction was clearly erroneous. Accordingly, we find no justification for modifying the defendant's sentence based upon the district court's treatment of relevant conduct.[8]

---

7. The holding to the contrary in *Restrepo* has been criticized by other circuits. *See, e.g., United States v. Blanco*, 888 F.2d 907, 910 (1st Cir. 1989), and *United States v. White*, 888 F.2d 490, 497 (7th Cir.1989).

8. The defendant asserts that the inclusion of relevant conduct predating the effective date of the guidelines violates the *ex post facto* clause of the Constitution, but we reached a contrary conclusion in *United States v. Ykema*, 887 F.2d

## V.

■ The defendant's final assignment of error relates to the two-level enhancement imposed by the district court for possession of a weapon during the offense of conviction. Sentencing Guideline § 2D1.1(b)(1) provides that "[i]f a dangerous weapon (including a firearm) was possessed during commission of the offense, increase by 2 levels." Defendant Miller asserts that the government presented insufficient evidence at the sentencing hearing to establish the presence of a weapon during any of the three drug transactions between the defendant and the informant. In this respect, it is clear that "[t]he preponderance of the evidence standard applies to contested facts in sentencing proceedings." *Silverman*, 889 F.2d at 1535. "The government bears the burden to establish enhancement factors, where contested."[9] *Id.; see also United States v. Rodriguez*, 896 F.2d 1031, 1032 (6th Cir.1990).

The government introduced hearsay testimony of agent Scott Nowinski concerning the informant's observation of a gun on a nearby table during the course of one drug sale by the defendant to the informant. Sentencing Guideline § 6A1.3 provides that, "[i]n resolving any reasonable dispute concerning a factor important to the sentencing determination, the [district] court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." Moreover, as the Fifth Circuit recently noted, "the commentary to guideline section 6A1.3 specifically permits consideration of testimony at sentencing hearings that would not be admissible at trial." *United States v. Cuellar–Flores*, 891 F.2d 92, 93 (5th Cir.1989). Thus, the hearsay testimony of the agent in this case was properly admitted at the sentencing hearing. *See, e.g., United States v. Sciarrino*, 884 F.2d 95, 97 (3d Cir.), *cert. denied,* —— 697, 700 (6th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 878, 107 L.Ed.2d 961 (1990).

U.S. ——, 110 S.Ct. 553, 107 L.Ed.2d 549 (1989); *Cuellar–Flores*, 891 F.2d at 93; *see also United States v. Fox*, 889 F.2d 357, 360 (1st Cir.1989). Agent Nowinski's testimony regarding the presence of the firearm was corroborated by the defendant's admission that he kept guns in the house, although the defendant disputed the assertion that a gun was present during any of the sales to the informant. Significantly, the commentary to section 2D1.1 states:

> The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The [two-level] adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense....

U.S.S.G. § 2D1.1, comment. (n. 3). The Eighth Circuit has upheld a two-level enhancement under section 2D1.1(b)(2) based only on "undenied possession of a firearm and ammunition in the same place where [the defendant] conducted drug transactions," *see United States v. Green*, 889 F.2d 187, 189 (8th Cir.1989), and we similarly have affirmed such a finding. *See United States v. McGhee*, 882 F.2d 1095, 1099 (6th Cir.1989). We review the district court's factual finding that the defendant possessed a firearm during the commission of the offense of conviction only for clear error, *see Green*, 889 F.2d at 188 (citing 18 U.S.C. § 3742(e)); *see also United States v. Perez*, 871 F.2d 45, 47–48 (6th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989), and we find that the district court's determination was not clearly erroneous.

AFFIRMED.

BOYCE F. MARTIN Jr., Circuit Judge, concurring.

I join Judge Guy's opinion upholding the sentence imposed upon the defendant, Harold Miller. I write separately to express my concern that the "relevant conduct"

---

**9.** Conversely, the defendant bears the burden of proving "facts which would lead to a sentence reduction under the Guidelines[.]" *United States v. Rodriguez*, 896 F.2d 1031, 1032 (6th Cir.1990).

considerations established by the Sentencing Commission in the guidelines are over-broad.

As pointed out by Judge Guy, this circuit has joined the majority of circuits in concluding that the guidelines allow a district court to consider conduct not charged in an indictment for the purpose of determining the base offense level for a defendant's sentence. *See United States v. Smith,* 887 F.2d 104 (6th Cir.1989); *United States v. Sailes,* 872 F.2d 735 (6th Cir.1989). We are bound by those decisions unless an *en banc* panel reverses their reading of the guidelines on the issue of legitimate usage of relevant conduct in sentencing calculations.

In this case, this circuit's interpretation of the guidelines' relevant conduct provisions in *Smith* and *Sailes* binds us to affirm the district court's application of the relevant conduct provisions. I disagree with Chief Judge Merritt's concerns that the "relevant conduct" provisions raise constitutional difficulties. In *United States v. Tucker,* 404 U.S. 443, 446–47, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972), the Court upheld the general proposition that a district court may consider conduct for which the defendant had not been convicted for the purposes of determining the defendant's sentence. *See Smith,* 887 F.2d at 108 n. 5 (so interpreting *Tucker*). However, I share Chief Judge Merritt's concern that the guidelines, as written, do not adequately reflect the intent of the Commission regarding the use of "relevant conduct" in determining the sentence. It is one thing to utilize the conduct in positioning a defendant within a determined range; it is quite another to use the conduct to determine the range itself by setting the base offense level. While the guidelines appear to allow the latter, and we have so interpreted them in *Sailes* and *Smith,* I now believe that we should re-examine the Commission's intent regarding this expansive language and the historical usage of "relevant conduct" in the relatively contented period in the federal system before the enactment of the nettlesome guidelines. Consequently, I concur in Judge Guy's analysis of this case under existing precedent in this circuit with the hope that we shall reconsider our interpretation of the "relevant conduct" provisions in light of the concerns expressed in Chief Judge Merritt's dissent.

MERRITT, Chief Judge, dissenting.

The problem before us arises from the need to interpret the Sentencing Guidelines regarding relevant uncharged conduct and the aggregation of uncharged offenses in light of the superior legal principles of the enabling legislation authorizing the Guidelines and the constitutional provisions regarding notice, self-incrimination, confrontation, waiver, and due process.

The one-count information in this case charges that the defendant "did willfully ... conspire, confederate and agree with other persons to distribute approximately one and one-quarter ounces [35.5 grams] of cocaine"—an offense calling for between 15 and 21 months incarceration under the Sentencing Guidelines. Attempting to follow the letter of the Sentencing Guidelines and the commentary issued by the Sentencing Commission, our Court affirms a sentence including more than three additional years of incarceration (60 months) imposed for a crime (distributing 1,169.5 grams) for which the defendant has never been convicted or even charged. The problem is that such a sentence, like the commentary of the Sentencing Commission itself, misinterprets the enabling legislation authorizing the promulgation of the Guidelines. And, by aggregating unindicted, unconvicted crimes with the one crime for which the defendant *was* convicted, the sentence also violates fundamental principles of due process. In addition, the sentencing judge, in a valiant effort to follow Guideline procedures, violated Miller's due process rights by failing to inform him adequately of—and misleading him about—the grave risks he faced in the presentence investigation.

The provision of the guideline enabling legislation authorizing "incremental" penalties plainly requires conviction of the offense for which the sentence is imposed.

In 28 U.S.C. § 994(*l*) (1988),[1] Congress allows adding an "incremental penalty" where, but only where, a defendant is "convicted of multiple offenses committed in the same course of conduct," not where a defendant is convicted only of a single offense during a time period in which he may also have committed other offenses for which he is not charged and convicted. The Guidelines should not be read to exceed the authority granted in the enabling legislation.

The trial judge in this case did just that. He sentenced the defendant relying on the Base Offense Level for 1,169.5 grams of cocaine rather than the Base Offense Level for a sale of 35.5 grams, the only crime charged against the defendant and the only crime to which defendant pleaded guilty. In doing so, the District Court followed the Guidelines for determining what the Base Offense Level is for the crime of conviction. Section 1B1.3 instructs the judge to increase the Base Offense Level for certain "relevant conduct." Part of relevant conduct for certain crimes, including defendant's, is any other conduct that was part of the same "scheme or plan" as the crime of conviction. Application note 2 says that § 1B1.3(a)(2) "applies to offenses of types for which convictions on multiple counts would be grouped together ...; multiple convictions are not required." Guideline § 1B1.3, comment. (n. 2). Most circuits, including our own, have capitulated to the language of this application note without looking at the legal basis behind it and have allowed defendants automatically and mechanically to be sentenced under the Guidelines for crimes not charged or convicted. *United States v. Sailes,* 872 F.2d 735 (6th Cir.1989); *see also United States v. Blanco,* 888 F.2d 907 (1st Cir.1989); *United States v. Guerrero,* 863 F.2d 245 (2d Cir.1988); *United States v. Taplette,* 872 F.2d 101 (5th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 128, 107 L.Ed.2d 88 (1989); *United States v. White,* 888 F.2d 490 (7th Cir.1989); *United States v. Mann,* 877 F.2d 688 (8th Cir.1989); *United States v. Restrepo,* 903 F.2d 648 (9th Cir.1990), *rev'g on reh'g* 883 F.2d 781 (9th Cir.1989); *United States v. Frederick,* 897 F.2d 490 (10th Cir.1990); *United States v. Alston,* 895 F.2d 1362 (11th Cir.1990). All of these cases overlook the fact that the Sentencing Commission exceeded its statutory and constitutional authority in writing this application note.

To permit this reading of the Guidelines not only exceeds the scope of the enabling legislation, but it also violates principles of constitutional procedure requiring that "no person shall be held to answer for a ... crime, unless on a presentment or indictment ... nor be deprived of ... liberty ... without due process of law" (Amendment V) and requiring that the accused be "informed of the nature and cause of the accusation," be accorded the right of trial by jury and the rights of confrontation and compulsory process (Amendment VI). While the defendant in this case waived some of these important constitutional protections as to the lone count against him, he did not validly waive those rights as to all crimes for which the government might at some time indict him. If the government wants to imprison the defendant as a seller of 1,169.5 grams of cocaine, it must charge, try, and convict him of that offense and establish its proof beyond a reasonable doubt, or have him validly waive his rights and plead guilty to the charge. To do anything less violates due process of law. *See In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon

---

**1.** The statute authorizes the Sentencing Commission to

impos[e] an incremental penalty for each offense in a case in which the defendant is *convicted* of—

(A) multiple offenses committed *in the same course of conduct* that result in the exercise of ancillary jurisdiction over one or more of the offenses; and

(B) multiple offenses committed *at different times....*

28 U.S.C. § 994(*l*)(1) (1988) (emphasis added). No language of the enabling act allows incremental penalties for *unconvicted* offenses either "in the same course of conduct" or "at different times."

proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he [or she] is charged."). Here the defendant has neither pleaded guilty nor been tried for the crime for which he was sentenced.

In addition to other problems with this case, the defendant did not receive adequate notice that his crime was distributing over 1,000 grams of cocaine or that this crime called for 60 months of imprisonment. The Constitution requires that defendants receive fair notice of the allegations against them. This requirement appears not once, but twice. The Fifth Amendment provides for fair notice by "presentment or indictment." The Sixth Amendment similarly requires that a defendant "be informed of the nature and cause of the accusation." This repetition of the right indicates the significance that the Founders attached to the right to receive fair notice of the crime that a defendant must defend against. Because the information in this case did not adequately inform the defendant of the "nature and cause of the accusation" that would be made against him, it violated the fundamental requirement of notice guaranteed by the Bill of Rights.

The notice requirement not only stems from the specific language of the Constitution, but it also forms the cornerstone of due process. Even in the days before the Supreme Court began to apply other provisions of the Bill of Rights to state court proceedings, the Court recognized two requirements that the Fourteenth Amendment imposed on the states: that the trial court have jurisdiction, and that

> there shall be notice and opportunity for hearing given the parties. Subject to these two fundamental conditions, which seem to be universally prescribed in all systems of law established by civilized countries, this court has up to this time sustained all state laws, statutory or judicially declared, regulating procedure, evidence and methods of trial, and held them to be consistent with due process of law.

*Twining v. New Jersey,* 211 U.S. 78, 111, 29 S.Ct. 14, 24, 53 L.Ed. 97 (1908) (citations omitted) (right against self-incrimination need not be available in state court trial). Justice Cardozo, still under the pre-incorporation doctrine, wrote that

> trial by jury may be abolished. Indictments by a grand jury may give way to informations by a public officer. The privilege against self-incrimination may be withdrawn and the accused put upon the stand as a witness for the state. What may not be taken away is notice of the charge and an adequate opportunity to be heard in defense of it.

*Snyder v. Massachusetts,* 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934) (citations omitted). As Justice Black wrote,

> No principle of due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal.

*Cole v. Arkansas,* 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed. 644 (1948). Thus, in light of the real charges for which the defendant was later sentenced, the information in this case violated the general principles of due process requiring fair notice to the defendant of the nature of the crime against which he must defend himself. The defendant was misled by the charge and the course of the proceedings into believing that his crime was of a smaller magnitude than the Sentencing Guidelines mandate.

Almost the entire spectrum of Fifth and Sixth Amendment rights granted to the accused are denied by the literal reading and enforcement of application note 2 of the Guidelines because, according to its procedure, a defendant may never be informed of the specific charge against him until the probation report issues. An indictment merely opens the game of defining the crime, which will be played out later in the probation office and the sentencing hearing. The real charge for which the defendant will be sentenced will

be drawn up in the probation office, and the sentence will be imposed without the right of confrontation at the sentencing hearing by the court on the basis of hearsay information. Instead of an indictment including all lesser included offenses of the crime charged, the Guidelines say that the sentencing court should include all "greater included offenses" as well.

In comparison, the old sentencing system was completely different from the mechanistic approach of the Guidelines. Although trial judges sentencing defendants before the Guidelines could receive information about additional crimes like that presented to the District Court, they were not positively directed by law to send a defendant to jail for it. They could allow it to influence their judgment in a limited way, or they could ignore it—perhaps because it came from the defendant's own mouth, perhaps because it was hearsay evidence—and not allow it to affect the sentence at all. Of course, in the days before the Guidelines, trial judges could decide to sentence a defendant like Miller to no imprisonment or parole at all, or to one hour, or to one week. "The ... contention that the [amalgamation] approach ... is consistent with pre-Guideline sentencing practice is, therefore, wrong." *Restrepo*, 903 F.2d at 657 (Pregerson, J., dissenting). The Guidelines now direct a range flatly restricting the sentencing court's best judgment. We should not allow this change to authorize sending a person to prison for an additional 1, 3, 10, or 30 years for uncharged and unproved conduct because the Guidelines permit the government, probation authorities or the court to go outside the indictment and to look for other crimes to combine with the one charged and proved. Rather, judges should use this information as they did before the Guidelines, that is, to determine *how* to sentence the defendant within the range, not to augment the Base Offense Level.

This case is also troubling because the trial court—again trying to follow the Guideline sentencing procedure—seriously misled the defendant into making statements to the probation officer which added more than three years to his time. Al-

though the defendant waived his right to counsel, the trial court—whatever the Guidelines may suggest to the contrary—still had obligation to instruct the defendant about the possible hazards he faced in the rest of the proceeding. Instead, the trial court told the defendant to "be honest and candid with the probation officer" because "that person is very helpful," and "you will be working with that person for a long time." J.A. at 25. Even if the presentencing meetings with probation officers contemplated by the Guidelines fall under *Minnesota v. Murphy*, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984) (no *Miranda*-type warnings necessary for meeting with post-imprisonment probation officer), instead of *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) (defendant must have *Miranda* warnings before presentence investigation by psychiatrist), the uncounseled defendant in this case would have no idea that he could invoke his right to remain silent in front of the probation officer, and no idea of the severe legal consequences of answering all the probation officer's questions. The trial judge disspelled any notion that the defendant may have had that he could invoke the privilege. Instead of telling him that he could remain silent, the trial judge affirmatively commanded the defendant to speak freely and candidly—to bare his soul. If the defendant had not followed these instructions, he would not face the Guidelines sentence that the majority affirms today.

The Guidelines obviously invite the prosecutor to indict for less serious offenses which are easy to prove and then expand them in the probation office. I note with concern, however, that the general Guidelines practice of aggregation of uncharged crimes will eventually harm prosecutors who are trying to follow the Sentencing Commission's policy in favor of jailing defendants for longer than the particular crime charged permits. First, it will destroy a defendant's willingness and incentives to plead guilty and to cooperate with probation officers. If neither the prosecution nor the defendant can predict the ex-

tent of a defendant's sentence on the basis of the crime charged, more defendants will take a chance on an acquittal by a jury rather than subject themselves to the same sentence (with a possible two point reduction for accepting responsibility for the crime) after a guilty plea. Second, if United States Attorneys pursue the dual Guidelines practices of aggregation without notice plus coerced self-incrimination and sentencing without confrontation, and if this Court or the Supreme Court begins to realize the multiple constitutional violations that the current Guidelines procedure raises, then those offices will spend a large share of their time defending the United States against habeas corpus suits under 28 U.S.C. § 2255, rather than prosecuting new criminals for new crimes.

