968 F.2d 1216
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Henry CLAY, Defendant-Appellant.
 No. 91-5639.
 United States Court of Appeals, Sixth Circuit.
 July 14, 1992.
 
 Before JONES and NORRIS, Circuit Judges, and JOINER, District Judge.*
 PER CURIAM.
 
 
 1
 The defendant, Henry Clay, appeals his conviction and sentence for conspiracy to possess cocaine with intent to distribute. For the following reasons, we affirm.
 
 
 2
 * On April 2, 1990, Memphis law-enforcement officers, on the basis of information obtained in a preliminary investigation, approached a young woman named Sherron Williams in the Memphis airport after she had disembarked a flight from Miami. The preliminary investigation gave the officers reason to suspect that Williams would be carrying drugs. When they approached Williams, they noted that there were several bulges underneath her jacket. The officers informed her of the nature of the encounter, and she consented to a search. After accompanying the officers to a rest room, Williams removed her jacket and T-shirt, exposing three packages wrapped in grey duct tape. Altogether, the packages contained approximately one kilogram of cocaine. On the basis of this finding, the officers arrested Williams. Additional searching uncovered a slip of paper with the names "Sam and Mrs. Brown" and a phone number written on it.
 
 
 3
 Williams agreed to cooperate with the officers. She told them about prior trips she had made to Miami to purchase cocaine. She disclosed the identities of those involved in the smuggling ring with which she had worked and identified the location of the transfers in Miami. Williams explained that she had been a courier for a John Butler. Her procedure, upon arriving in Miami, was to take a taxi from the airport to Room 203 of the Seven Seas Hotel, which appeared to be registered to a Debra Sanzini. According to Williams, Sanzini was Clay's girlfriend. Williams would normally wait at the hotel until she received a phone call from Sam Black, who always checked to see if she had arrived into Miami safely. Some time after the call, Black and Clay would arrive and count the money she had brought for the purchase, given to her in Memphis by Butler. Once they were satisfied with the amount, Black and Clay would leave the room and return with the drugs. Then the three of them would open the package of cocaine and divide it into smaller packages for Williams to conceal and smuggle back to Memphis. Williams had made five trips, including the one that resulted in her arrest, and had smuggled three and one-half kilograms of cocaine total, in kilogram and half-kilogram amounts.
 
 
 4
 On each occasion, Williams obtained the purchase money from Butler, gave it to Black in Miami, who gave her the drugs in exchange, which she then turned over to Butler when she returned to Memphis. The only part Clay played in these transactions was to help count the money and to divide the cocaine. He did not ever receive the money from Williams, nor did he ever give her the drugs. Williams testified that he seemed to be not "really involved." See J.A. at 53.
 
 
 5
 Clay testified that he had met Williams through Sanzini and had seen her three or four times at the Seven Seas Hotel, but denied any involvement in the drug-smuggling ring. Antoine Parks, Clay's cousin, testified that he had met Williams at the Seven Seas Hotel and seen her there while visiting his cousin on three or four occasions in March of 1990. Parks also testified that, according to Williams, she had come to Miami from Tennessee to obtain drugs. Parks stated that Sanzini was a prostitute who worked for Clay, rather than Clay's girlfriend.
 
 
 6
 The United States offered evidence corroborating Williams's story. Joseph Eldridge, an officer on the Memphis police force, testified that he searched the vehicle of the individual who was at the airport to pick up Williams on the day she was arrested. He discovered a piece of paper in the vehicle, on which the names Sam Brown and Debra Lynn Sanzini were written, as well as a phone number. A drug enforcement agent in Miami, Joseph Shepard, testified that he went to Room 203 of the Seven Seas Hotel and found Sanzini there. She told him that Clay and Black had met with Williams in the room on prior occasions. He discovered some marijuana, cocaine, and drug paraphernalia in the room. The cocaine was tested by a chemist with the Drug Enforcement Administration, who determined that it contained the same unusual mix of substances as the cocaine Williams was carrying on April 2, 1990.
 
 
 7
 Clay was arrested on April 2, 1990. On June 11, 1990, a federal grand jury indicted Clay in a seven-count, four-defendant indictment. He was charged in count one with conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846 (1988), and in counts two through six with possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) (1988). Clay was arraigned on October 3, 1990, at which time he entered a plea of not guilty. His jury trial began on December 17, 1990. Both at the close of the prosecution's evidence and at the close of all of the evidence, Clay moved for a judgment of acquittal; in both instances, the district court denied both motions. The jury returned its verdict on December 19, 1990, finding Clay guilty of count one (conspiracy), and not guilty of counts two through six (possession).
 
 
 8
 On May 2, 1991, the district court held Clay's sentencing hearing. Clay argued that the district court should calculate his base offense level using the amount of one kilogram of cocaine. The district court instead used the total amount charged in the conspiracy, three and one-half kilograms, and sentenced Clay to a ninety-seven-month term of imprisonment to be followed by a four-year term of supervised release. This timely appeal followed.
 
 II
 
 9
 The first issue Clay raises in this appeal is whether the district court erred in denying his motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 for insufficiency of the evidence. Federal Rule of Criminal Procedure 29 provides that a defendant can move at the close of the government's evidence or at the close of all of the evidence, for the court to enter a judgment of acquittal. The ground for this motion is that "the evidence is insufficient to sustain a conviction." Fed.R.Crim.P. 29(a). Clay argues that the government's evidence was insufficient to prove his guilt of the conspiracy charge--the only charge of which he was convicted--beyond a reasonable doubt.
 
 
 10
 We review claims of insufficient evidence in a criminal case to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). A finding of guilt may be based entirely upon circumstantial evidence, and it is not necessary that the evidence remove every reasonable hypothesis except that of guilt. United States v. Stone, 748 F.2d 361, 363 (6th Cir.1984), coram nobis denied, No. 88-5445 (6th Cir. Feb. 20, 1990) (Westlaw, CTA6 database), and cert. denied, 111 S.Ct. 71 (1990).
 
 
 11
 Clay contends that the only evidence against him came from Williams's testimony. He argues that her testimony was inconsistent, in that she made statements that exculpated him to a degree. Although she did not directly contradict her statements regarding Clay's role in counting the money or cutting the cocaine, she opined that he probably was not really involved. She also testified that Clay never made the actual exchanges of the drugs and the money. Clay stresses the fact that Williams was a cocaine addict, that she lied to the police when first apprehended, and that she had an agreement with the government under which the prosecution will recommend a lighter sentence for her in return for her assistance in successfully prosecuting her codefendants. Clay concludes that these facts made her an unreliable witness.
 
 
 12
 The United States responds that the motion was properly denied, because Williams's somewhat exculpatory statements regarding Clay do not contradict her testimony that he helped facilitate the transaction, as described above. We agree. Clay handled both the money and the cocaine, whether or not he made the exchanges. Williams merely indicated that his participation was less significant than Black's.
 
 
 13
 Furthermore, as the United States points out, Clay's attacks on Williams's character only serve to highlight that Clay is attempting to make her credibility the issue of this appeal. Witness credibility is a determination of fact that is "solely within the province of the jury." United States v. Schultz, 855 F.2d 1217, 1221 (6th Cir.1988). To the extent that Williams's credibility is considered, however, the United States is correct that there was other evidence that tended to corroborate Williams's testimony, such as the fact that Room 203 was registered to Sanzini, and that the cocaine found there matched the unusual mixture of cocaine found on Williams on April 2.
 
 
 14
 Giving the prosecution the benefit of a favorable interpretation of the above evidence, as we must, we cannot find that the jury was unreasonable in convicting him of conspiracy. A rational jury could have construed Williams's statement to mean that Clay was involved as only a minor player in the drug ring. Whether Clay's involvement was extensive or merely incidental, guilt was nonetheless proven. Thus, we conclude that the district court did not err in denying Clay's motion for judgment of acquittal.
 
 III
 
 15
 Clay also asserts in this appeal that the district court erred in calculating his sentence based upon the entire amount of the conspiracy, 3.5 kilograms of cocaine, rather than simply one kilogram, the amount involved during the last trip on March 31, 1990. In reviewing the district court's findings of fact under the guidelines, this Court is bound by those findings unless they are clearly erroneous. United States v. Robison, 904 F.2d 365, 370 (6th Cir.), cert. denied, 111 S.Ct. 360 (1990). The district court makes its findings based on a preponderance-of-the-evidence standard. United States v. Moreno, 933 F.2d 362, 374 (6th Cir.1991), cert. denied, 112 S.Ct. 265 (1991).
 
 
 16
 Clay notes that the jury found that there was not proof beyond a reasonable doubt that he had possessed any of the cocaine. The only evidence corroborating Williams's testimony that Clay was involved in the conspiracy was the evidence found in connection with the March 31 trip, which involved one kilogram. Based on these premises, Clay concludes that the preponderance of evidence supports his involvement with only the final kilogram, and that he was improperly sentenced based on an amount including the remaining 2.5 kilograms involved in the conspiracy.
 
 
 17
 Although we recognize a certain degree of logic in Clay's argument, we find that the law does not support it. The United States cites United States v. Miller, 910 F.2d 1321 (6th Cir.1990), cert. denied, 111 S.Ct. 980 (1991), which holds that all of the criminal conduct involved in an enterprise must be used in sentencing individuals who have been convicted of conspiring in that enterprise. Id. at 1327. The jury found that Clay was guilty of conspiring with Black, Butler, and Williams to distribute cocaine; thus, the entire amount of the conspiracy, under the law of this circuit, is chargeable to him for sentencing purposes. Evidence, including the testimony of Clay and his cousin, certainly indicates that Clay was with Williams in the Seven Seas Hotel on at least three occasions in March. We are not persuaded that the findings of fact were clearly erroneous. The district court properly sentenced Clay for all 3.5 kilograms.
 
 IV
 
 18
 Accordingly, the district court's judgment and sentence are AFFIRMED.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Judge for the Eastern District of Michigan, sitting by designation