**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 97-11368
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RONALD BOWMAN ARNOLD,
also known as Bo Arnold,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

July 27, 1998

Before POLITZ, Chief Judge, WISDOM and WIENER, Circuit Judges.

PER CURIAM:

In this direct criminal appeal of his sentence only, Defendant-Appellant Ronald Bowman Arnold challenges the district court's method of calculating the amount of a "listed" chemical that he possessed. Finding no reversible error, we affirm.

I

FACTS AND PROCEEDINGS

Arnold pleaded guilty to an indictment charging that, from January 1997 through September 3, 1997, he knowingly and intentionally possessed benzyl chloride, a list II chemical under

21 U.S.C. § 802,[1] with the intent to manufacture a controlled substance, phenyl acetone, in violation of 21 U.S.C. § 841(d)(1).[2] The factual resumé provided that, pursuant to his purchase order, one liter (1,100 grams) of benzyl chloride was delivered to Arnold's home in March 1997. After Arnold ordered a second liter (1,100 grams) of benzyl chloride in September 1997, agents of the Drug Enforcement Administration (DEA) were notified. The agents observed the delivery of the second bottle of benzyl chloride, and Arnold was arrested.

The presentence investigation report (PSR) recommended a base offense level of 24 based on Arnold's possession of a total of 2,200 grams of benzyl chloride.[3] Arnold objected, arguing that although he had ordered two different liters of benzyl chloride during several months, he had converted the first liter into approximately 500 grams of benzyl cyanide.[4] At the sentencing hearing he argued that at the time of his arrest he was in possession of 1,100 grams of benzyl chloride, a List II chemical, and 500 grams of benzyl cyanide, a List I chemical. Arnold insisted that, under the U. S. Sentencing Guidelines (the "Guidelines"), when an offense involves both List I and List II

---

[1]21 U.S.C. § 802(35)(c) (1994).

[2]21 U.S.C. § 841(d)(1) (1994).

[3]See U.S. SENTENCING GUIDELINES MANUAL § 2D1.11(d)(4) (1997).

[4]Neither Arnold's written objections to the PSR nor the probation office's response to such objections are included in the record; however, the contents of such items were outlined during the sentencing hearing.

chemicals, "you look at whichever chemical provides the highest base offense level in order to determine what the base offense level should be." Arnold surmised that, because 500 grams of benzyl cyanide had a corresponding base offense level of 20 and 1,100 grams of benzyl chloride also had a corresponding base offense level of 20, the correct base offense level was 20, the highest base offense level corresponding to the chemicals present on the date of his arrest.

The Government countered by addressing the testimony of one of the DEA agents involved in Arnold's arrest. The agent testified that, at the time of Arnold's arrest, all that remained of the first liter of benzyl chloride was a small portion in the bottom of the bottle. The agent testified further that Arnold stated that he had spilled the first liter. Regarding Arnold's more recent contention that he had used the first liter of benzyl chloride to manufacture a controlled substance, the agent testified that a yield of "much more than 500 grams" of benzyl cyanide would result; that if Arnold had converted the first liter of benzyl chloride, a yield of approximately one liter, or 1,100 grams, of benzyl cyanide could be expected.

Observing that Arnold had pleaded guilty to a continuing offense during which time he possessed 2,200 grams of benzyl chloride, the district court overruled Arnold's objection to the PSR and concluded that 24 was the appropriate base offense level. The court sentenced Arnold to 52 months of imprisonment, and Arnold timely appealed.

3

II

ANALYSIS

As his sole point of error on appeal, Arnold contends that the district court erred in overruling his objection to the PSR. He reasserts the sentencing methodology that he proposed at the sentencing hearing, arguing that "[n]othing in U.S.S.G. § 2D1.11 or in the case law suggests that [such is] incorrect." He also urges that the district court should have made a finding as to the amount of benzyl cyanide he possessed at the time of his arrest, but that even assuming that he possessed 1,110 grams of benzyl cyanide "(as the DEA agent asserts)," the resulting base offense level would have resulted in a sentencing range lower than the sentence imposed by the court. He further argues that, were a question to arise concerning the proper application of § 2D1.11, "the resulting answer would enure to his benefit under the rule of lenity."

The Government notes that Arnold pleaded guilty to a continuing offense during which period he possessed 2,200 grams of benzyl chloride. The Government thus argues that the trial court's factual finding that Arnold possessed such a quantity of the List II chemical was not erroneous.

Arnold's argument, however, is not based on the district court's factual determination that 2,200 grams of benzyl chloride were involved in the offense. Rather, Arnold challenges the district court's application of the Guidelines in determining that the issue of what became of the first liter of benzyl chloride was immaterial for sentencing purposes.

4

We review a district court's application of the Guidelines de novo.[5] Arnold's argument is based on the Guidelines' provision that if both List I and List II chemicals are involved, the sentencing court should use the greater of the base offense level for the List I chemicals or the List II chemicals.[6] He insists that, despite his admitted possession of 2,200 grams of benzyl chloride during the span covered by the indictment to which he pleaded guilty, his sentence should be based only on the amount of benzyl chloride, or its resultant product, on hand at the time of his arrest.

Although there is no guideline authority or case law expressly rejecting Arnold's "logic," common sense dictates that the ultimate fate of the first liter of benzyl chloride is irrelevant for sentencing purposes. The rule of lenity does not abrogate common sense.[7]

Arnold was not convicted of possessing both benzyl chloride and benzyl cyanide. Rather, he admittedly possessed two liters of benzyl chloride during the time bracketed by the indictment. Even if no benzyl chloride had been discovered at the time of his arrest, the court was well within the law when it sentenced him based on the aggregate amount that he had possessed. Moreover, as noted by the Government at the sentencing hearing, the Guidelines

---

[5]United States v. Fitzhugh, 984 F.2d 143, 146 (5th Cir.), cert. denied, 510 U.S. 895, 114 S.Ct. 259, 126 L.Ed.2d 211 (1993).

[6]See § 2D1.11 cmt. 6; § 2D.11(d) n. *C.

[7]See United States v. Picquet, 963 F.2d 54, 56 (5th Cir.), cert. denied, 506 U.S. 902, 113 S.Ct. 290, 121 L.Ed.2d 215 (1992).

5

do not contemplate rewarding a defendant for going one step further in the manufacture of controlled substances.[8]

III

CONCLUSION

Albeit a narrow one, the sentencing issue considered today is res nova in this circuit. In holding that the trial court correctly interpreted the applicable Guidelines provision when, in calculating Arnold's sentence, it used the quantity of the listed chemical contained in the factual resumé produced at his sentencing hearing following his plea of guilty to the charge for which he was indicted, we join at least two other circuits that have approbated such an approach. In United States v. Miller,[9] the Sixth Circuit noted that a sentencing court is permitted to consider the quantity of drugs a defendant admits to buying or selling, notwithstanding that he might have possessed a lesser quantity at the time of his arrest.[10] Similarly, in United States v. Western,[11] the Fourth Circuit held that a defendant's statement regarding the quantity of drugs in which he trafficked may properly form a basis for an

---

[8]See, e.g., § 2D1.11(c)(1)(providing that if offense involved the manufacture of a controlled substance, the "manufacture" guideline is applicable if it is greater than the "possession" guideline).

[9]910 F.2d 1321 (6th Cir. 1990), cert. denied, 498 U.S. 1094, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991).

[10]Id. at 1327.

[11]Nos. 97-4387, 97-4386, 1998 WL 276299 (4th Cir. Apr. 6, 1998) (per curiam).

offense level calculation.[12]  Here, Arnold pleaded guilty to possessing 2200 grams of benzyl chloride.  The district court committed no error in using that quantity in its sentencing calculus.

AFFIRMED.

---

[12]<u>Id.</u> at *5.