**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Samuel Alvin ASHLEY, also known as Sam Cooper; Steve Anders; Steven Adkins; Michael Holtz; Michael Anderson, Defendant–Appellant.**

No. 03–3502.

United States Court of Appeals,
Sixth Circuit.

March 17, 2004.

Terry Lehmann, Asst. U.S. Attorney, William Gary Claytor, Cincinnati, OH, for Plaintiff–Appellee.

Kevin M. Schad, Indian Springs, OH, for Defendant–Appellant.

Before: NORRIS and COLE, Circuit Judges; and ECONOMUS, District

Judge.*

## ORDER

This is a direct appeal from a judgment and commitment order in a criminal prosecution. The parties have agreed to waive oral argument and, upon examination, this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

In 2002, Samuel Alvin Ashley was named in a three-count information on fraud and income tax charges. The district court subsequently accepted Ashley's plea and found him guilty of two counts of mail fraud, in violation of 18 U.S.C. § 1341, and one count of tax evasion, in violation of 26 U.S.C. § 7201. The district court sentenced Ashley to a total of 135 months of imprisonment and a three-year period of supervised release. This appeal followed.

Ashley was a fugitive when he founded the Ohio Community Emergency Food Center in 1991 under an assumed name. The ostensible aim of the Center was to solicit donations from the general public to buy food for needy individuals. An investigation into the Center, and Ashley, began in 1999 in response to complaints of mismanagement and diversion of the solicited funds. This investigation culminated in the filing of a three-count superseding information against Ashley. The information charged Ashley with two counts of mail fraud and one count of income tax evasion. The mail fraud counts were based on two specific instances of Ashley having placed a check in the mail from different donors to the Center. The tax evasion count was based on Ashley's having failed to file an income tax return for 1999.

The parties eventually entered into a plea agreement. Ashley, for his part, committed to plead guilty to the three counts of the superseding information. Ashley acknowledged that the sentencing decision rested with the district court alone, but he agreed that "[t]he amount of loss for purposes of [USSG] § 2B1.1 is over One Million Dollars." The United States Attorney committed not to prosecute Ashley for any uncharged prior acts that were part of the same course of conduct. In addition, the government agreed to make a non-binding recommendation that Ashley should be given sentencing consideration for his acceptance of responsibility and, finally, a pending indictment against Ashley in another matter would be dismissed following the district court's acceptance of the plea agreement. The agreement does not contain any provision requiring Ashley's further cooperation with law enforcement officials in any way.

The parties met before the district court for the Fed.R.Crim.P. 11 plea colloquy. The district court ascertained that Ashley was competent to offer the plea and that he understood the nature of the charges and their respective penalties. The court asked the Assistant United States Attorney to review orally the terms of the written plea agreement. Although the agreement was said to encompass the amount of loss stipulation (more than $1,000,000), the parties promptly brought to the court's attention the fact that this figure was, in reality, still the subject of dispute. The court elicited a factual basis for the plea and advised Ashley of the constitutional rights to which he was entitled. The court accepted the plea and set the matter over for sentencing and preparation of a presentence report.

---

* The Honorable Peter C. Economus, United States District Judge for the Northern District of Ohio, sitting by designation.

The parties met again six months later to address Ashley's motion to withdraw his guilty plea and his objections to several findings of fact in the pre-sentence report. Ashley personally addressed the court in support of his motion to withdraw his plea, a motion he claimed was based on a series of false representations, threats, and double-dealing by the Assistant United States Attorney. Ashley, in particular, repeatedly told the court that the government breached its promise not to use any of his de-briefing statements against him at sentencing. The court heard from counsel and denied the motion. The court then entertained arguments on Ashley's thirteen separate objections to findings in the pre-sentence report. The objections relevant to the resolution of this appeal go to the amount of loss and the number of victims for which Ashley was to be sentenced.

The pre-sentence report attributed to Ashley a mail fraud loss of more than $1,000,000 stemming from his diversion of funds earmarked for his food distribution operation. The probation officer who prepared this report set forth in detail the reports from the Internal Revenue Service, the bank records, and the accounts of investigating officers used in arriving at this figure. Ashley steadfastly maintained that he was not responsible for the recommended loss total of more than one million dollars.

Ashley also specifically objected to the pre-sentence report finding that he should be held accountable for committing a crime with more than fifty victims. The probation officer arrived at this figure in reliance on a representation of a United States Postal Inspector that "there were hundreds, if not thousands, of victims in this case." In that same paragraph, the report notes that Ashley's destruction of his business records largely accounted for the government's inability to identify specific victims of the mail fraud. Ashley argued vigorously that the absence of any specific victim information meant that he could only be held accountable for the two identified parties.

The district court formally denied both of these objections at sentencing. The court observed that this figure was supported by Ashley's own admissions and the evidence supporting the pre-sentence report. The court also noted that Ashley failed to offer any rebuttal evidence in this regard. The court subsequently found that Ashley's crime involved hundreds or thousands of victims who, because of the circumstances of the case, could not be identified. The court heard from Ashley and proceeded to impose the sentence of record.

██ On appeal, counsel for Ashley brings three claims for review. The first claim is that the district court erred in relying on immunized information gleaned from Ashley to determine sentencing enhancements. USSG § 1B1.8(a) provides, in relevant part, that self-incriminating information shall not be used in determining the applicable sentencing guideline range when a defendant's cooperation is predicated on an agreement with the government that self-incriminating information provided pursuant to the agreement will not be used against the defendant. Section 1B1.8(a) thus "unquestionably forbids the government to influence the sentencing range by disclosing revelations made by a defendant in the course of cooperation as required by a plea agreement." *United States v. Jarman,* 144 F.3d 912, 914 (6th Cir.1998) (citing *United States v. Miller,* 910 F.2d 1321, 1325 (6th Cir.1990)). Plea agreements are contractual in nature. This court applies traditional principles of contract law in the interpretation and en-

forcement of a plea agreement. *United States v. Robison,* 924 F.2d 612, 613 (6th Cir.1991).

A review of the four corners of the written plea agreement shows that Ashley did not commit to, and the government did not demand from him, an explicit cooperation agreement so as to trigger the protections of USSG § 1B1.8(a). There is no evidence of any such agreement other than Ashley's unsupported, impassioned statements to this effect at hearings following the revelation that he was going to receive a higher sentence than he expected. Traditional contract law principles, and the complete absence of any other support for this claim, would preclude this court going outside the plain language of the agreement. This claim lacks merit.

■ The second claim is that there was insufficient evidence adduced to support the district court's conclusion that there were more than fifty victims of Ashley's crimes for sentencing purposes. USSG § 2B1.1(b)(2)(B) provides for a four level enhancement of a base offense level in a guideline sentence for a fraud offense when the offense involved fifty or more victims. This court reviews de novo a district court's interpretation of the sentencing guidelines, and reviews the district court's findings of fact in this regard for clear error. *United States v. Canestraro,* 282 F.3d 427, 431 (6th Cir.2002).

The district court had before it the unchallenged statement of a United States Postal Inspector that Ashley's mail fraud victimized "hundreds, if not thousands" of individuals. In addition, Ashley realized a portion of the proceeds in this scheme through a "jug bottle" collection of coins at various locations, a system virtually designed to involve scores of donors contributing small amounts of money at any one time. Ashley's defense to this finding is largely based on the inability of investigators to reconstruct business records ordered destroyed by Ashley once he became aware that he was under scrutiny. The district court's decision in this regard was not clearly erroneous.

■ The final claimed error is the amount of loss involved in the scheme. This court reviews for clear error a district court's determination of the amount of loss attributable to a defendant for purposes of assigning a guideline offense level. *United States v. Abdullah,* 162 F.3d 897, 906 (6th Cir.1998). The district court had before it uncontradicted evidence from an Internal Revenue auditor, bank records, and statements from Ashley himself from which it drew the conclusion that Ashley's crimes netted him at least one million dollars. While Ashley had no burden to disprove any such allegation initially, he was completely unable to rebut this figure even with the aid of a court-appointed accountant. There is thus nothing in the record before this court from which one could conclude that the district court made a mistake in reaching this loss valuation. This appeal lacks merit.

Accordingly, the district court's judgment is affirmed.