941 F.2d 1210
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Christopher BROWN, Defendant-Appellant.
 No. 90-1482.
 United States Court of Appeals, Sixth Circuit.
 Aug. 21, 1991.
 
 Before BOYCE F. MARTIN, Jr. and DAVID A. NELSON, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 
 ORDER
 
 1
 Upon consideration of the petition for rehearing filed by the defendant,
 
 
 2
 It is ORDERED that the petition for rehearing be, and it hereby is, DENIED.
 
 
 3
 It is further ORDERED that the Per Curiam Opinion filed this date, be and hereby is substituted for the Per Curiam Opinion filed July 18, 1991.
 
 
 4
 PER CURIAM.
 
 
 5
 This is an appeal by a criminal defendant from a sentence imposed after the defendant pleaded guilty to a charge of conspiracy to distribute LSD. The defendant contends that the district court erred in determining the weight of the LSD and in declining to depart from the sentencing range prescribed by the United States Sentencing Guidelines. We find no prejudicial error in the record before us, and we shall affirm the sentence.
 
 
 6
 * Undercover government agents purchased LSD from an individual who named defendant-appellant Christopher Brown as his supplier. The agents then made a purchase directly from Mr. Brown. At that point the agents arrested Mr. Brown and searched his apartment. More LSD was found in the apartment, along with other drugs. Mr. Brown eventually pleaded guilty to a one-count information charging him with conspiracy to distribute more than one gram of LSD, a violation of 21 U.S.C. §§ 841(a)(1) and 846.
 
 
 7
 Prior to the sentencing hearing the defendant noticed the deposition of a prominent psychiatrist. The government objected, basing its objection in part on the fact that the notice had been given less than two business days before the deposition was to have been taken. Defense counsel cancelled the deposition. Soon thereafter the defendant filed a motion asking the district court to allow counsel to take depositions of expert witnesses for presentation at the hearing. Defense counsel was notified over the telephone that the motion was denied, but the denial was not memorialized in a docket entry.
 
 
 8
 The sentencing hearing went forward at the scheduled time, and after hearing testimony and argument the court found that the total weight of the LSD involved in Mr. Brown's offense was 10.35 grams. This included the weight of 1,000 units of LSD sold by Mr. Brown to the government agents on January 18, 1989, the weight of 3,400 units seized from the apartment on the same day, and the weight of other quantities of LSD sold and offered for sale by Mr. Brown. In calculating the weight of the LSD, the district court included the weight of blotter paper used as a carrier medium.
 
 
 9
 The government had initially maintained that the correct weight of the LSD seized on January 18, 1989, was 32.78 grams--6.5 grams for the 1,000 units sold to the agents and 26.28 grams for the 3,400 units seized at the apartment. At the sentencing hearing, however, the government presented an agent who testified that the correct combined weight was 31.92 grams.
 
 
 10
 Defense counsel argued the weight of the LSD seized at the apartment should be determined by use of the Drug Equivalency Tables contained in the Sentencing Commission's Guidelines Manual. With respect to the 1,000 units sold to the agents, however, defense counsel stated that "I think we are stuck with the 6.5 grams on the 1,000 hits.... They weighed 6.5 grams. I can't really dispute those." Assuming the court used the equivalency tables for the LSD seized at the apartment and rejected certain arguments not relevant here, defense counsel offered to stipulate that the total weight of all of the drugs would be between 10 and 30 grams. The government was not willing to accept such a stipulation, and urged the court to peg the total weight at more than 30 grams. Under the government's approach, the offense level would have been 34; under the defendant's, it was 32. This difference could have had a significant effect on the sentence.
 
 
 11
 The district judge accepted the defendant's argument as to how the weight should be calculated. The judge explained that he had questions about the calibration of the instruments used by the government in weighing the LSD, about the methodology employed, and about the long delay between the time the drugs were seized and the time the weighing was completed. The judge therefore used the drug equivalency tables to determine the weight of the LSD seized from the apartment, and he accepted the 6.5 gram figure for the drugs sold to the agents.
 
 
 12
 Under this approach, given the defendant's criminal history category and assuming a two-point reduction in the offense level for his acceptance of responsibility, the guidelines called for a sentence of between 97 and 121 months' imprisonment. Mr. Brown urged the court to depart downward from this range, pursuant to U.S.S.G. § 5K2.13, because he suffered from reduced mental capacity. The testimony of three witnesses was offered in this connection.
 
 
 13
 Dr. Lawrence Warbasse, a physician with the Attention Deficit Disorder (ADD) Clinic at Wayne State University School of Medicine, testified that he and his group had examined Mr. Brown and concluded that he suffered from attention deficit disorder, depression, and other problems consistent with a schizoid personality type. Dr. Warbasse explained that regardless of their intelligence, those who have ADD may exhibit poor judgment and have difficulty conforming to societal norms. He explained that drug abuse can be an ADD symptom, and he opined that Mr. Brown's use of cocaine prior to taking school exams was a form of self-medication.
 
 
 14
 Dr. Warbasse further testified that diagnosing ADD in an adult patient is controversial in the medical community, and that use of drugs may itself affect a person's judgment, his ability to conform to societal norms, and his mental capacity. He expressed the opinion that Mr. Brown's mental capacity had been reduced because of drugs that he took from 1980 through 1989.
 
 
 15
 The court gave Dr. Warbasse a definition of diminished capacity from Black's Law Dictionary and asked if Mr. Brown suffered from this condition. The doctor was unable to provide a definitive answer, and he could not say that Mr. Brown had sold LSD because of diminished mental capacity.
 
 
 16
 A second expert, a psychologist, interviewed Mr. Brown and his family and reviewed Brown's records. The psychologist gave it as his opinion that Brown suffered from "a genetically-based neurological problem that is much more complicated than just an ADD."
 
 
 17
 A third witness, a man with two children who suffer from ADD, testified generally about the behavior patterns of those afflicted with this condition.
 
 
 18
 After hearing the testimony and considering other material about ADD, the court declined to depart from the guideline range. Mr. Brown was sentenced to imprisonment for 100 months and was ordered to pay a $5,000 fine and a special assessment of $50.
 
 
 19
 Mr. Brown filed a timely appeal from his sentence. The case was briefed for the appeal and oral arguments were heard before this court. After the arguments were heard, this court removed the case from the active docket pending a decision of the United States Supreme Court in Chapman v. United States, No. 90-5744, where the issue was whether the weight of blotter paper used as an LSD carrier should be taken into account for sentencing purposes. Chapman has now been decided, Chapman v. United States, 111 S.Ct. 1919 (1991), and Mr. Brown's case has been restored to the active docket.
 
 II
 
 20
 On appeal, Mr. Brown contends that the district court committed clear error in its finding as to the weight of the 1,000 units of LSD sold to the government agents. The court having rejected the government's calculations of the weight of the drugs seized in the apartment, Mr. Brown argues that the court acted inconsistently in accepting the government's position on the weight of the drugs sold to the agents.
 
 
 21
 We are not persuaded. The district court simply accepted the same figure for the weight of the 1,000 units that Mr. Brown himself accepted. The defendant cannot now be heard to argue that the district court committed clear error in so doing. See United States v. Sloman, 909 F.2d 176, 182 (6th Cir.1990) ("An attorney cannot agree in open court with a judge's proposed course of conduct and then charge the court with error in following that course.")
 
 
 22
 Mr. Brown goes on to assert that his trial attorney provided ineffective assistance of counsel by conceding the weight of the 1,000 units to be 6.5 grams instead of arguing that the equivalency tables should be used for all of the drugs. Again we are not persuaded. The combined weight urged by defense counsel yielded a lower sentence than that which the guidelines would have called for had the court accepted either of the government's combined weight figures. This hardly suggests that Mr. Brown was deprived of the counsel to which he was entitled under the Sixth Amendment.
 
 III
 
 23
 Mr. Brown also argues that the district court erred in using the weight of the blotter paper carrier in calculating the weight of the drugs. In Chapman v. United States, 111 S.Ct. 1919 (1991), the Supreme Court held that the "blotter paper customarily used to distribute LSD[ ] is a 'mixture or substance containing a detectable amount' of LSD." 111 S.Ct. at 1925. Therefore, the district court was entirely correct in including the weight of the blotter paper in calculating the quantity of the "mixture or substance" containing LSD in determining Mr. Brown's sentence.
 
 IV
 
 24
 Mr. Brown also argues that the district court erred in declining to grant a downward departure based on his claim that he suffered from diminished capacity. See U.S.S.G. § 5K2.13:
 
 
 25
 "Diminished Capacity (Policy Statement)
 
 
 26
 If the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public."
 
 
 27
 Although there is only limited room for appellate review of a district court decision not to depart downward, see United States v. Draper, 888 F.2d 1100 (6th Cir.1989), failure to depart is reviewable if the court held the mistaken view that it was without authority to depart. United States v. Maddalena, 893 F.2d 815, 817-18 (6th Cir.1989). Where no such error intervenes, and the sentence is otherwise lawful and reflects a correct application of the guidelines, the failure to depart is not cognizable on appeal. United States v. Davis, 919 F.2d 1181, 1187 (6th Cir.1990). See also United States v. Gregory, 932 F.2d 1167 (6th Cir.1991) (no appeal lies to challenge degree of downward departure).
 
 
 28
 In the case at bar the district court was fully aware of its ability to depart downward. A downward departure is inappropriate under § 5K2.13, however, if the diminished capacity resulted from drug use and if the defendant's criminal history reflects a need for incarceration. Mr. Brown admitted to using various illegal drugs for nine years prior to his arrest, and he admitted that during at least part of this time he financed his habit by selling drugs. After careful review of the evidence offered in support of a departure, the court concluded that there was no way to separate Mr. Brown's alleged diminished capacity based on ADD from the diminished capacity that could arise from the use of drugs. This conclusion was not clearly erroneous, the court's questions on diminished capacity were not inappropriate, and we have no basis for questioning the district court's decision not to depart.
 
 V
 
 29
 Finally, we turn to the motion to take depositions. Mr. Brown contends that he was prejudiced by not receiving a ruling on this motion, and he says that the experts he wished to depose would have provided important assistance to the sentencing judge as to the effects of ADD on mental capacity.
 
 
 30
 We note that defense counsel admitted that he received a telephone call informing him that the district court had denied his motion. The district judge has supplemented the record on appeal to confirm the accuracy of defense counsel's recollection. Mr. Brown contends that the supplementation and a subsequent amendment thereto contained factual errors, but the errors complained of do not affect our analysis of the appeal. The defendant was not prejudiced by the absence of a formal docket entry, and we are not persuaded that the trial judge abused his discretion in declining to allow the depositions.
 
 
 31
 AFFIRMED.
 
 
 32
 BOYCE F. MARTIN, Jr., Circuit Judge, concurring.
 
 
 33
 I concur in the conclusion that Christopher Brown should be sentenced because of the inclusion of the weight of the blotter paper in which the LSD was found. I do not agree, however, with the remainder of the per curiam and concur only in the fact that his sentence under the Supreme Court of Chapman v. United States was appropriate.