27 F.3d 567
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Sergio BALDERAS (93-1201); and Raul Balderas Segura
(93-1202), Defendants-Appellants.
 Nos. 93-1201, 93-1202.
 United States Court of Appeals, Sixth Circuit.
 April 21, 1994.
 
 Before: BOGGS and NORRIS, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendants appeal their jury convictions and sentences. Sergio Balderas was convicted for conspiracy to distribute marijuana and to possess marijuana with intent to distribute, possession of marijuana with intent to distribute, and use of a communication facility to facilitate the conspiracy to possess marijuana with intent to distribute, in violation of 21 U.S.C. Secs. 841, 843, and 846, and 18 U.S.C. Sec. 2. Raul Balderas Segura was convicted for conspiracy to distribute marijuana and to possess marijuana with intent to distribute, in violation of 21 U.S.C. Secs. 841 and 846. For the reasons discussed herein, we affirm.
 
 
 2
 * In early 1989, Sergio Balderas, while visiting Michigan, offered to provide marijuana to an old friend to sell in Michigan. Later that year, Balderas became involved with Ruben Guiterrez, and the two established a Texas-Michigan marijuana trafficking relationship. Balderas sent marijuana from Texas to Guiterrez and others in Michigan. At first, Balderas's niece shipped the marijuana by Federal Express, United Parcel Service, train, and other means, but the two later had a falling out over a family matter and she no longer participated. From then on, Balderas and his co-conspirators shipped marijuana in packages through the United States Postal Service. Guiterrez paid Balderas in Texas or wired money to him; he testified at trial that when he visited Texas, he would package marijuana for Balderas to mail to him and his confederates in Michigan. Balderas's niece testified to her participation and testified that Balderas would purchase the marijuana for her to package, noting that she saw him purchase marijuana once. The other co-conspirators testified to their participation in the conspiracy and to Balderas's activities.
 
 
 3
 In January 1990, postal inspectors intercepted a load of marijuana in Texas and a controlled delivery was made at the home of one of the co-conspirators in Michigan. Sixteen postal express mail labels were recovered from Post Office records; the records indicated the shipment of packages from Balderas. Guiterrez testified that Raul Balderas Segura assisted him in packaging and shipping the marijuana that was intercepted by law enforcement officers at the home in Michigan. Handwriting and fingerprint experts testified that Balderas had written some of the express mail labels and his fingerprints were on some of the labels themselves. They identified Segura as the possible writer of four other labels.
 
 
 4
 Defendants were arrested and indicted in April 1991. The jury returned its verdicts on May 19, 1992, finding Balderas and Segura guilty as charged, but acquitting co-defendant Manuel Balderas. Prior to the scheduled sentencing date in October 1992, Balderas filed a motion, in which Segura later joined, for a new trial based on juror misconduct. An evidentiary hearing involving each of the jurors and the alternate juror was held on December 15, 1992. Each juror testified at the hearing regarding extrinsic influence or prejudice against Hispanics,[1] prior drug use by juror Mary Addicott, and extrinsic evidence being present in the jury room (specifically, a trial notebook prepared for each juror contained a fingerprint card from a previous arrest of Balderas). Juror Addicott had been addicted to cocaine and alcohol about six years before, but had undergone rehabilitation and no longer used drugs; during voir dire, she did not disclose this fact, although she, along with the rest of the prospective jurors, had been asked if anyone she knew had any problems with any drugs. She later disclosed her history to fellow jurors, indicating that her drug addiction was a low point in her life and that she had been hanging out with the wrong crowd, and, at the hearing, admitted that she thought that defense counsel was "interested in anybody's drug involvement in any way" but "felt [that her] past wasn't part of being a juror." Upon hearing about her past, another juror was concerned about a mistrial and therefore brought the information to the attention of the jury commissioner, who brought the juror to the district judge's law clerk. The law clerk told the judge, who took no action on the matter (and who does not independently recall the information), neither notifying the parties nor making a record of the communication. With respect to the fingerprint card, apparently three of the jurors saw the card in their notebooks, which had been prepared by a case agent and furnished to the jurors by the United States. They noted that the date was from a prior proceeding in the mid-1980s but did not know if it indicated a prior conviction.
 
 
 5
 Following the hearing and subsequent oral arguments, the district judge rejected the defendants' motions and sentenced Balderas to 188 months' confinement, $450 in special assessments, eight years of supervised release, and a $1000 fine. He sentenced Segura to 70 months' imprisonment, six years of supervised release, and a special assessment of $50. They appeal to this court, alleging several trial and sentencing errors.
 
 II
 
 6
 * Defendants argue that the district court erred in denying their motion for a new trial based on the exposure of Balderas's fingerprint card to the three jurors. They contend that exposure of a defendant's prior criminal history warrants a new trial whether or not there is actual prejudice to the defendant. The district court conducted an evidentiary hearing, consisting of in camera interviews of the jurors, and found that the fingerprint card was not raised during deliberations and that no credible evidence existed to demonstrate that the jury or any individual juror knew that Balderas had a prior conviction.[2] Thus, the district judge concluded that "the error was harmless; ... the card had no prejudicial influence on the jury, and there is absolutely no likelihood it could have affected the jury verdict." The district judge also noted that the evidence of both defendants' guilt was so overwhelming that the jurors' exposure to the card could not have influenced the outcome or affected the substantial rights of the defendants.
 
 
 7
 We have held that the standard to be used in determining whether a new trial is required after one or more jurors have been exposed to extraneous material is that the defendant must demonstrate actual prejudice; the decision of the district judge, based on this standard, is reviewed only for abuse of discretion. United States v. Griffith, 756 F.2d 1244, 1252 (6th Cir.), cert. denied, 474 U.S. 837, 106 S.Ct. 114 (1985). See also United States v. Hill, 688 F.2d 18, 20 (6th Cir.), cert. denied, 459 U.S. 1074, 103 S.Ct. 498 (1982) (defendant must show actual prejudice resulting from jury's exposure to extrinsic material to justify a new trial). United States v. Andrea, 538 F.2d 1255 (6th Cir.1976), and United States v. Ortiz, 507 F.2d 1224 (6th Cir.1974), upon which the Government relies, held that even deliberate testimony by an FBI agent-witness regarding the defendant's prior criminal history was subject to harmless error analysis.
 
 
 8
 Defendants rely on United States v. Poston, 430 F.2d 706, 709 (6th Cir.1970). There, the court held that when evidence that the defendant was on probation when he allegedly committed the offense is presented to the jury and no curative instruction is given, "prejudicial error has intervened." The court in Poston was concerned with prejudice against the defendant. The court noted that testimony regarding a record or commitment to jail rises "only to a lesser plateau of prejudice" because such a record or commitment might result merely from arrest and thus "do not necessarily rise to the level of previous convictions." Ibid. Thus, to the extent that Poston governs this case, it recognizes that where the extraneous evidence to which the jury is exposed is something less than a conviction--such as a fingerprint card--the defendant suffers a lesser degree of prejudice than if the jury had become aware of a prior conviction.
 
 
 9
 More recent cases indicate that the alleged per se rule that results from Poston does not apply to all instances in which the jury is exposed to extraneous evidence of a defendant's prior criminal history. In United States v. Stewart, Nos. 91-5174-5177, 1991 WL 276255, at * * 5 (6th Cir. Dec. 20, 1991) (unpublished), cert. denied, 112 S.Ct. 1702 (1992), the court held that an FBI witness's remark that the defendant may have been a career criminal was ambiguous, isolated, and therefore not so prejudicial as to constitute reversible error; no curative instruction was requested or given. The court in Stewart relied on United States v. Terry, 729 F.2d 1063 (6th Cir.1984), which explained that this court's role on appeal is "to review the record as a whole and determine whether these errors so adversely affected the rights of the defendants as to compel reversal. If not, then we must determine whether the exercise of our supervisory powers require[s], as a matter of sound judicial administration, the deterrent therapy of a new trial." Stewart, 1991 WL 276255 at * * 5 (quoting Terry, 729 F.2d at 1070). And in United States v. Feroni, 655 F.2d 707, 713 (6th Cir.1981), we noted that the harmless error rule applies to a witness's statement regarding the prior criminal history of a defendant. There, we concluded that the prejudicial effect of the statement was too slight to warrant reversal because the reference to the prior convictions was inadvertent, it had been elicited by defense counsel, other evidence mitigated the effect of the remark on the jury, and there was overwhelming evidence of defendant's guilt. Finally, "each case must be decided on the basis of the particular situation presented." United States v. Wells, 431 F.2d 432, 433-34 (6th Cir.), cert. denied, 400 U.S. 967, 91 S.Ct. 380 (1970).
 
 
 10
 The district court here did not abuse its discretion in denying defendants' motion for a new trial. After the in camera interviews of the jurors, the district judge concluded that no juror knew that Balderas had a prior conviction; the few jurors who saw the fingerprint card (two jurors and possibly the alternate juror, who did not participate in the deliberations) saw only the fingerprint card and did not infer that that meant a conviction. The district judge found that the fingerprint card and any prior arrest or conviction were not discussed during deliberations. Given the testimony of the co-conspirators, the mailing records, the fingerprint and handwriting analyses, and the telephone records, and given that only two of the deliberating jurors were exposed to the fingerprint card and appear not to have been influenced by it, the district court did not abuse its discretion in denying a new trial. The cases indicate that defendants must show actual prejudice to warrant a new trial and that harmless error analysis applies to a case like this. The district judge, having had an opportunity to hear the testimony of the jurors and weigh its credibility, found that defendants did not establish actual prejudice and that the error was harmless. The judge's findings were not clearly erroneous, nor did he otherwise abuse his discretion in denying the motion for a new trial.
 
 B
 
 11
 Defendants next argue that the district court abused its discretion in denying their motion for a new trial based on the ex parte communication from the juror to the court, via the law clerk. They note that the district judge admitted that he should have notified counsel of what he had learned. Defendants argue that, where, as here, no contemporaneous record is made of the ex parte proceeding, prejudice is conclusively presumed. Further, relying on Sullivan v. Louisiana, 113 S.Ct. 2078 (1993), they contend that the ex parte contact is a structural defect in the trial and not subject to a harmless error analysis.
 
 
 12
 Fed.R.Crim.P. 43 requires that a defendant be present at "every stage of the trial," including, as here, instances of contact between juror and judge. Fed.R.Crim.P. 52(a), which provides that harmless error is to be disregarded, applies to violations of Rule 43. United States v. Giacalone, 588 F.2d 1158, 1164-65 (6th Cir.1978), cert. denied, 441 U.S. 944, 99 S.Ct. 2162 (1979). A forbidden communication will not always result in reversal, and the standard is whether there is "any reasonable possibility of prejudice." Id. at 1165 (quoting United States v. Reynolds, 489 F.2d 4, 8 (6th Cir.1973)). Even a court's ex parte communication to the jury will not require reversal where the substantive rights of the parties have not been affected. Miller v. American President Lines, Ltd., 989 F.2d 1450, 1468 (6th Cir.), cert. denied, 114 S.Ct. 304 (1993). We review the trial court's decision not to grant a mistrial for alleged unauthorized contact with jurors for abuse of discretion. United States v. Pennell, 737 F.2d 521, 532-33 (6th Cir.1984), cert. denied, 469 U.S. 1158, 105 S.Ct. 906 (1985).
 
 
 13
 Defendants rely on Standard Alliance Industries, Inc. v. Black Clawson Co., 587 F.2d 813, 828 (6th Cir.1978), cert. denied, 441 U.S. 923, 99 S.Ct. 2032 (1979), which indicated that "[e]x parte contact between judge and jury raises a presumption of reversible error." There, the judge sent his law clerk to interview jurors to determine the result of a contact between two jurors and one of the parties; no record was kept and no notice was given to the parties of the judge-jury contact. Thus, because the length and nature of the contact was unknown, the presumption of prejudicial error could not be rebutted. Id. at 828-29.
 
 
 14
 The district judge here noted that the facts surrounding this ex parte incident are not disputed. The juror contacted the jury commissioner, who contacted the law clerk; the juror conveyed the information to the clerk, who in turn told the judge. Defendants rely on the presumption of prejudice where there is no record of the ex parte communication. Here, however, the facts are not in dispute, and thus Standard Alliance, in which the length and nature of the communication between clerk and jurors were unknown, is distinguishable. See Miller, 989 F.2d at 1468. Defendants point to nothing that would establish actual prejudice or bias against them resulting from the juror-to-clerk-to-judge communication here. Because the communication was from the juror to the judge, the error asserted here quite clearly had no effect on the jury. Thus, Sullivan is inapplicable. We hold that the district judge did not abuse his discretion in denying the motion for new trial.
 
 C
 
 15
 Defendants also argue that the district court's refusal to grant a new trial was an abuse of discretion because a juror had not disclosed during voir dire her prior drug use. Defendants rely on Sullivan here, too, contending that Juror Addicott deliberately concealed her prior drug use and that the deliberate concealment resulted in a biased and partial jury, a structural error not subject to harmless error analysis.
 
 
 16
 We uphold a denial of a motion for new trial absent abuse of discretion. United States v. Patrick, 965 F.2d 1390, 1399 (6th Cir.), cert. denied, 113 S.Ct. 376 (1992). "A prospective juror's failure to disclose material information is grounds for a new trial if it demonstrates bias. If a juror is found to have deliberately concealed material information, bias may be inferred. If, however, information is not concealed deliberately, the movant must show actual bias." Ibid. (citations omitted); United States v. Howard, 752 F.2d 220 (6th Cir.), cert. denied, 472 U.S. 1029, 105 S.Ct. 3506 (1985). An evidentiary hearing is the required procedure for determining whether concealment was deliberate and the district court's findings are reviewed for clear error. Cunningham v. Sears, Roebuck & Co., 854 F.2d 914, 915-16 (6th Cir.1988). "[A] trial judge's finding of impartiality should be set aside only upon a showing that prejudice is manifest." Howard, 752 F.2d at 225 (quoting Haney v. Rose, 642 F.2d 1055, 1060 (6th Cir.1981)).
 
 
 17
 The district court found that Juror Addicott was truthful and honest and that she did not deliberately conceal the information in question because the question regarding her own past was not specifically put to her. Further, the district judge found that there had been no showing that she could have been excused for cause based on that information because the judge found her to be impartial. We note, too, that the district judge observed the voir dire questioning.
 
 
 18
 The other jurors likewise do not appear to have been influenced or affected by Addicott's disclosure of her past. Defendants concentrate their argument on whether there has been deliberate concealment here and do not demonstrate actual bias resulting from Addicott's failure to disclose her drug use. Because there has been no showing of manifest prejudice (indeed, one of the co-defendants was acquitted, strongly suggesting twelve impartial jurors), and nor does the record reveal any, we shall not disturb the district judge's findings. Because there was no deliberate concealment and thus no biasing of the jury, Sullivan, which addresses errors of a constitutional magnitude, such as a trial before a biased jury, is inapplicable. Therefore, because the district judge's findings as to Addicott's concealment are not clearly erroneous, and because actual bias has not been shown, we affirm the district court's denial of the motion for new trial.
 
 III
 
 19
 * Balderas challenges his sentence, claiming that the district court erred in not departing downward because of his alleged diminished capacity. He says that his addiction to heroin was involuntary and resulted in his diminished capacity. Balderas contends that the testimony of Mary DeSloover, "an expert in mitigation," established that he suffered from diminished capacity from his involuntary drug addiction, noting that his drug use began at an early age and concluding that he functioned poorly in society. Balderas argues that the district judge's refusal to depart downward was clearly erroneous because all the elements meriting a departure were present and the judge merely did not want to "open up a can of worms in every case we have."
 
 
 20
 While the government bears the burden of establishing enhancement factors by a preponderance of the evidence, see United States v. Garner, 940 F.2d 172, 174 (6th Cir.1991), the defendant has the burden of proving, by a preponderance of the evidence, that a reduction in the guidelines offense level is warranted. United States v. Morrison, 983 F.2d 730, 732-33 (6th Cir.1993). The standard of review of the district court's findings in a guideline sentencing hearing is set out in 18 U.S.C. Sec. 3742(e): "The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." A finding is "clearly erroneous" when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. United States v. Perez, 871 F.2d 45, 48 (6th Cir.), cert. denied, 492 U.S. 910, 109 S.Ct. 3227 (1989). Where the guideline range was properly computed, the district court was not unaware of its discretion to depart from the guideline range, and the sentence was not imposed in violation of law or as a result of an incorrect application of the guidelines, the district court's failure to depart is not cognizable on appeal. United States v. Hamilton, 949 F.2d 190, 192 (6th Cir.1991) (quoting United States v. Davis, 919 F.2d 1181, 1187 (6th Cir.1990)).
 
 
 21
 The district judge here recognized that downward departure was within his discretion, but found that such a departure is not warranted, noting that Balderas's drug problem did not fall within the parameters of Sec. 5K2.13 of the sentencing guidelines. See United States v. Brown, No. 90-1482, 1991 WL 160088, at * * 4 (6th Cir. Aug. 21, 1991) (unpublished order) (downward departure inappropriate under Sec. 5K2.13 if diminished capacity resulted from drug use). The district court's finding that there was not enough evidence to support Balderas's contention that he suffered from diminished capacity is not clearly erroneous. The sentence imposed was within the guideline range and was not otherwise imposed in violation of law or as a result of an incorrect application of the guidelines. Thus, the district court's refusal to depart downward is not cognizable on appeal.
 
 B
 
 22
 Balderas also claims that the district court's decision to include 350 pounds of marijuana, in addition to the amount involved in the conspiracy charged, in determining his sentence was clearly erroneous. The basis for the 350 pounds was the finding of scribbled numbers on the backs of business cards found in Balderas's wallet at the time of his arrest. Balderas argues that the United States failed to prove by a preponderance of the evidence that these numbers related to marijuana sales; the only evidence presented as to the "ambiguous" numbers was the postal inspector's testimony (at the June 1991 detention hearing), which amounted to there being an odor of marijuana on the money found in the wallet and the numbers indicating the price of marijuana in Texas. Balderas contends that the numbers refer to fertilizer sales (in Mexican pesos) relating to the Balderas family business. Furthermore, Balderas contends that, even if the numbers do refer to drug transactions, they are not sufficiently connected to the crimes of which he was convicted to be considered conduct relevant to sentencing; indeed, the cards were found when Balderas was arrested in April 1991, more than a year after the conspiracy ended in February 1990.
 
 
 23
 "[I]n a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." U.S.S.G. Sec. 1B1.3, comment. (backg'd.). See also U.S.S.G. Sec. 2D1.1, comment. (n. 12) ("Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level."); United States v. Hodges, 935 F.2d 766, 773-74 (6th Cir.), cert. denied, 112 S.Ct. 251 (1991); United States v. Miller, 910 F.2d 1321, 1326-27 (6th Cir.1990), cert. denied, 498 U.S. 1094, 111 S.Ct. 980 (1991). A district court's determination that conduct is relevant to the offense of conviction is reviewed for clear error. United States v. Silverman, 889 F.2d 1531, 1539 (6th Cir.1989).
 
 
 24
 After reviewing the evidence--the business cards with the numbers, the testimony with respect to the meaning of the numbers and the smell of marijuana on them, and the proffered alternative explanation for the numbers--the district court concluded that the numbers represented amounts and prices of marijuana. The district court's conclusions are not clearly erroneous. Balderas's argument that the numbers were not sufficiently connected to the charged conspiracy is without merit. The drug involved was the same. While the cards were not found until Balderas was arrested in 1991, a year after the conspiracy with which he is charged had ended, that conspiracy itself ran for almost a full year, which reduces the impact of the year's lag between the end of the charged conspiracy and the finding of the cards. See Miller, 910 F.2d at 1327 (court properly relied on drug quantities involved in a conspiracy spanning twenty months, but count of conviction alleged only three months). The use of the business cards is consistent with the operation of the conspiracy, as demonstrated by Segura's use of his business address on the return labels.
 
 C
 
 25
 Segura challenges his sentence on the ground that the district court incorrectly classified him as a minor, and not a minimal, participant in determining his sentence. Segura contends that his role was minimal given the length of the conspiracy, the number of people involved, the size of the operation, and his limited involvement. He argues that the only evidence linking him to the conspiracy is the handwriting on the labels and the testimony that he helped wrap and package seventeen pounds; this evidence, he contends, is thin and the district court was clearly erroneous in not granting a four-level decrease.
 
 
 26
 The Sentencing Guidelines provide for a decrease in a defendant's offense level if the defendant's role in the offense was "minimal" (decrease of four levels), "minor" (decrease of two levels), or in between those two (decrease of three levels). U.S.S.G. Sec. 3B1.2. The "minimal participant" mitigation provision
 
 
 27
 applies to a defendant who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant.
 
 
 28
 U.S.S.G. Sec. 3B1.2, comment. (n. 1). This provision should be used "infrequently." Id., comment. (n. 2). "It would be appropriate, for example, for someone who played no other role in a very large drug smuggling operation than to offload part of a single marihuana shipment, or in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs." Ibid. In contrast, "a minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal." Id., comment. (n. 3).
 
 
 29
 The district court's determination of a defendant's role in the criminal activity is reviewed for clear error. United States v. Williams, 940 F.2d 176, 180 (6th Cir.), cert. denied, 112 S.Ct. 666 (1991). The court emphasized that the downward adjustment for a minimal participant is to be used infrequently and is primarily for someone who played a single, limited role in a very large organization. Ibid. See also United States v. Hodges, 935 F.2d 766, 774-75 (6th Cir.) (defendant minor, not minimal, participant where he was involved in more than a single drug transaction, where he had knowledge of the structure of the criminal scheme, and where his conduct contributed to the use of his premises as a base of operations), cert. denied, 112 S.Ct. 251 (1991); United States v. Anders, 899 F.2d 570, 580-81 (6th Cir.) (defendant not a minimal participant because the evidence failed to show conclusively that she lacked knowledge or understanding of the scope and structure of the enterprise), cert. denied, 498 U.S. 990, 111 S.Ct. 532 (1990).
 
 
 30
 The district court's determination that Segura was a minor, and not minimal, participant is not clearly erroneous. Guiterrez testified that Segura assisted him in packaging and shipping the marijuana. The handwriting and fingerprint experts identified Segura as the writer of four labels. The return address labels were for the address where Segura worked. This evidence supports the finding that Segura had knowledge of the scope and structure of the conspiracy and therefore was not a minimal participant. Therefore, the district court's conclusion is not clearly erroneous.
 
 III
 
 31
 For the foregoing reasons, the convictions and sentences of Balderas and Segura are AFFIRMED.
 
 
 
 [1]
 This issue is not raised on appeal
 
 
 [2]
 Defendants also contend that Fed.R.Evid. 606(b) prohibits the inquiry made at the evidentiary hearing. That rule provides that "a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations ..., except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." Fed.R.Evid. 606(b). Defendants' contention with respect to Rule 606(b) is without merit. See Smith v. Phillips, 455 U.S. 209, 217, 102 S.Ct. 940, 946 (1982); Rushen v. Spain, 464 U.S. 114, 121 n. 5, 104 S.Ct. 453, 457 n. 5 (1983)