**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gerald BILLINGTON,
Defendant–Appellant.**

**No. 86–3089.**

United States Court of Appeals,
Seventh Circuit.

Argued April 15, 1987.

Decided April 11, 1988.

Lillian Wilmore, Oteri Weinberg & Lawson, Boston, Mass., for defendant-appellant.

Melvin K. Washington, Asst. U.S. Atty., Patricia A. Gorence, U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before POSNER and COFFEY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

COFFEY, Circuit Judge.

Gerald Billington, defendant-appellant, pleaded guilty to conspiring to possess with intent to distribute marijuana and cocaine in violation of 21 U.S.C. § 846. Billington appeals his conviction, asserting that the government breached the plea agreement and that the district court improperly denied his motion for specific performance of the plea agreement. We affirm.

I

On August 7, 1985, Gerald Billington was indicted on two counts of a 48–count indictment naming several other defendants. He was charged in Count 4 with conspiring to possess with the intent to distribute marijuana and cocaine in violation of 21 U.S.C. § 846. Count 39 charged Billington with aiding and abetting the possession with the intent to deliver at least one pound of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. On August 23, 1985, Billington entered a plea of not guilty. Over a year later on September 5, 1986, a change-of-plea hearing was held, and a plea agreement was executed and filed with the district court.

Pursuant to the plea agreement, the defendant entered a plea of guilty to Count 4 of the indictment. In exchange, the government agreed to dismiss Count 39 against him after the imposition of sentence, recommend a six-year sentence,[1] and not oppose Billington's presentence release on bail. Central to this appeal, the plea agreement at ¶ 11 provided in its entirety that:

"Defendant further acknowledges and understands that the United States Attorney's office will fully apprise the district court and the United States Probation Office of the nature, scope, and extent of the defendant's conduct regarding the charge against him and related matters including all matters in aggravation and mitigation relative to the issue of sentencing. It is understood by the United States and the defendant, however, that part of the factual basis for defendant's plea is that the evidence that would be adduced at trial would show that during the time period set forth in Count 4 of the Indictment, Defendant Gerald Billington possessed with intent to distribute and did distribute approximately one thousand (1,000) to two thousand (2,000) pounds of marijuana and that Defendant Gerald Billington did knowingly and intentionally aid and abet possession with intent to deliver not in excess of one (1) kilogram of cocaine."

The information in ¶ 11 regarding the quantity of cocaine involved in Billington's offense was based on the facts known to the government when the parties entered into the plea agreement.

On October 3, 1986, the government submitted an expanded "Offer of Proof" against the defendant containing new and incriminating information inconsistent with the facts previously recited in ¶ 11. Specifically, the government's "Offer of Proof" established that Billington delivered at least four to six kilograms of cocaine rather than the one kilogram recited in ¶ 11. The new information came to light subsequent to the execution of the initial plea agreement and after two of Billington's co-defendants pleaded guilty.

Billington contended that the government's October 3, 1986, Offer of Proof violated the terms of the plea agreement and would result in a longer period of incarceration under the then applicable paroling policy guidelines set forth in 28 C.F.R. § 2.20 (1986). The guidelines "establish[ed] a national paroling policy and indicat[ed] the customary range of time to be served before release for various combinations of offense (severity) and offender (parole prognosis) characteristics." *Id.*

---

1. Billington faced a maximum penalty under Count 4 of 15 years' imprisonment, as well as a fine of $125,000, plus a $50 special assessment.

§ 2.20(a) and (b).[2] In Billington's case, based on the 1 kilogram of cocaine mentioned in ¶ 11 of the plea agreement, his offense would have been rated in Category 5, and thus he would not be considered for parole until he served at least 24 to 36 months in confinement. With the increased quantities of cocaine recited in the government's offer of proof, the parole guidelines elevate the crime to a Category 6 offense and require that he serve at least a 40- to 52–month period of incarceration. Thus, in hopes of limiting the length of his imprisonment to the original 24 to 36 months (for one kilo), Billington filed a motion with the court requesting the issuance of an order for specific performance of the plea agreement.

The trial court held a sentencing hearing on October 29, 1986, wherein the court observed:

"The defendant claims that the government has breached the specific terms of the plea agreement by the submission of an offer of proof to the United States Probation Department relating to the defendant's narcotics involvement as significantly in excess of one kilogram of cocaine and two thousand pounds of marijuana mentioned in the plea agreement.

A plea bargain is a contract, the terms of which must necessarily be interpreted in the light of the parties' reasonable expectations. When a dispute arises as to whether the agreement has been breached the Court must determine the essence of the particular agreement and the government's conduct relating to it's obligation....

This Court must further look to what was reasonably understood by the defendant when he entered into the plea or changed his plea from not guilty to guilty.

\* \* \* \* \* \*

Now, it is the defendant's position that he bargained for and received the government's promise that it would limit it's disclosure to the Probation Department and the Court concerning the defendant's narcotics involvement to two thousand pounds of marijuana, and one kilogram of cocaine.

\* \* \* \* \* \*

Now, the government has stated it's position by pointing to the first sentence of paragraph eleven which precedes the part that I have just read, and which recites that 'the United States Attorney's Office will fully apprise the District Court and the United States Probation Office of the nature, scope, and extent of the defendant's conduct regarding the charge against him, including all matters in aggravation and mitigation, relative to the issue of sentencing.'

It appears that if this contract, and particularly paragraph eleven, is to be completed as the defendant asks this Court to direct the United States Attorney to comply with, it would in effect, ask this Court to direct that certain information which certainly appears at least to fall in the category of aggravation relative to the issue of sentencing, be withheld from the Court.

Obviously if this issue had been raised earlier, such a plea agreement would not have been acceptable.

The question before the Court, however, is what was reasonably understood

---

**2.** "An evaluation sheet containing a 'salient factor score' serves as an aid in determining the parole prognosis (potential risk of parole violation)." 28 C.F.R. § 2.20(e) (1986). The "salient factor score" rates "the defendant based on his prior convictions/adjudications, prior commitments of more than 30 days, age at current offense and any prior commitments, whether there has been any recent commitment, whether he is a probation/parole/confinement escape status violator this time, and whether he has any heroin/opiate dependence." App.Br. at 17 (summarizing the salient factor score form included in 28 C.F.R. § 2.20, July 1, 1985 ed.). In

this case Billington's offender characteristics produced a "very good" salient factor score. Further, the guidelines rated the offense severity depending upon the quantity of controlled substances involved in the defendant's offense. 28 C.F.R. § 2.20. For example, a "medium-scale" cocaine offense involves 100 grams to 1 kilogram of 100 percent pure cocaine, or an equivalent amount, and is graded as a Category 5 offense. On the other hand, a "large scale" cocaine offense is considered a Category 6 offense since the crime entails 1 kilogram but less than 5 kilograms of 100 percent pure cocaine, or an equivalent amount.

by the defendant before he entered into his plea of guilty to Count Four of the indictment.

No dispute that there were substantial discussions, some of which related to the offense severity rating, salient factor score, and obviously the number of months that the defendant would likely serve if the Court were to abide by the plea agreement.

The government maintains that it rejected any attempt to specify the offense severity rating in the agreement.

Resourceful, diligent, counsel, appear in this case as have in the past, to have developed another way to skin the cat. It appears entirely possible that the defendant, through his counsel, and through the language that has been referred to, attempted to limit the quantum of proof which the government would provide at the time of sentencing as well as at the plea hearing.[3]

The word 'however', as I have indicated, in that paragraph, and as it appears to have been used there, appears to the Court to have been designed at least by one of the parties to limit the obligation to fully apprise this Court and the Probation Department of the matters of aggravation. It does, as counsel has pointed out, use the words, 'part of the

factual basis for the plea'. The Court, however, is most concerned, deeply concerned, about the unusual language that 'the defendant aided and abetted the possession with intent to deliver not in excess of one kilogram of cocaine', rather than 'approximately one kilogram of cocaine', or some similar less restrictive language.

The Court finds that this language is consistent with the defendant's argument that it was his understanding that this language would limit the information provided to the Probation Department and to this Court by the United States Attorney's Office. If this construction of the contract were to stop there, it would make the contract, in the Court's judgment, unenforceable, as illegal. It is clearly and I don't think anybody would seriously argue, that it is clearly against public policy for the United State's Attorney's office to withhold relevant information from either the Probation Department or the sentencing judge.

Having found that the interpretation placed upon the language of the contract would render it illegal, I must now re-examine the relief that is sought by the defendant.[4]

---

**3.** The district court specifically "caution[ed] the United States Attorney's Office to avoid, during the course of plea negotiations, any implied promise that will in any way limit the information which it will provide to the Probation Department or to the Court for sentencing purposes, whether that information is known to the government at the time of the entry of the plea agreement or whether it is information that may subsequently come to the government's attention."

**4.** Support for the trial judge's finding that a plea agreement may not restrict the government from fully disclosing all relevant information to the probation department or the court can be found in *United States v. Block*, 660 F.2d 1086 (5th Cir.1981), *cert. denied*, 456 U.S. 907, 102 S.Ct. 1753, 72 L.Ed.2d 164 (1982). There the court observed that:

"As a part of a plea agreement, the Government is free to negotiate away any right it may have to recommend a sentence. However, the Government does not have a right to make an agreement to stand mute in the face of factual inaccuracies or to withhold relevant factual information from the court. Such an

agreement not only violates a prosecutor's duty to the court but would result in sentences based upon incomplete facts or factual inaccuracies, a notion that is simply abhorrent to our legal system."
*Id.* at 1091–92. Similarly, in *United States v. Cook*, 668 F.2d 317, 320 n. 4 (7th Cir.1982), we noted:

"Rule 11(e)(1), Fed.R.Crim.P., lists the promises an attorney for the Government may make in return for a defendant's guilty plea. The withholding of relevant information from the sentencing court is not among the possibilities listed. Moreover, the very nature of the sentencing process would seem to preclude such an agreement. Information concerning an individual's actual involvement in the offense, as well as his background and character, is absolutely essential to an informed sentencing determination. If Government records and reports are the only available source of that information, as they often are, the Government's withholding of them would in effect require the court to make its determination blindfolded. *See also United States v. Avery*, 589 F.2d 906, 909 (5th Cir.

I can't force the government to specifically perform an illegal contract or an illegal act. The defendant has not asked for leave to withdraw his plea, although it was alluded to by counsel in his statement. I must find, however, that based upon the information that has been presented to this Court, that if the defendant maintains, as he has here, that the plea was not voluntarily given, because the construction that he placed upon the term of the contract places it in the position where the only remedy is specific performance, I cannot and will not grant that relief.

I will, however, take a ten minute recess to allow the defendant time to confer with his counsel as to whether he wishes to ratify the plea agreement as it stands, with the understanding that sentence two of paragraph eleven relates solely to the offer of proof which the government was prepared to offer at the time of the entry of the guilty plea, and thus proceed to the imposition of sentence, or whether the defendant wishes to withdraw his guilty plea, and have a trial date set."

Sentencing Hearing Transcript, October 29, 1986.

Subsequently, defense counsel requested on behalf of the defendant an additional two weeks to reconsider the guilty plea. Granting the defendant's request the court further stated:

"All right, counsel, because of the importance of this matter, obviously to the defendant, but also to those of us who are charged with the responsibility of insuring that justice is done, at least so far as it is humanly possible to do, this Court is going to grant the defendant's request, and I ask that you notify this Court not later than the 12th day of November, 1986, as to whether or not you desire to withdraw from the plea agreement, so that you will have all the facts before you if you decide to exercise your option to withdraw and reinstate your not guilty plea, then, Mr. Billington,

this matter will be scheduled for trial at 9:30 A.M., on Monday, December 1, 1986."

*Id.* Billington elected not to withdraw his plea of guilty and the district court was so informed by defense counsel in a letter dated November 13, 1986. The letter provided, *inter alia:*

"This letter will confirm my recent telephone conversation with your law firm [sic] regarding the status of the above matter. I advised your law clerk as well as Assistant United States Attorney Mel Washington that *it was Mr. Billington's intention to proceed to sentencing in this matter rather than to request a withdrawal of his previously entered plea and a jury trial.*

It is our understanding, as well as the understanding of Mr. Washington, that this matter will proceed to sentencing pursuant to the terms of the plea agreement previously executed and filed in this matter with the exception of that portion of the plea agreement dealing with the government's proposed offer of proof [i.e., ¶ 11]. It is our understanding that this court has stricken that portion of the plea agreement."

(Emphasis added). The defendant was subsequently sentenced to ten years' imprisonment and ordered to pay a $50 special assessment. On appeal, the defendant contends that the district court's refusal to order specific performance of the initial plea agreement constitutes reversible error.

## II

 Billington asserts that the Fifth and Sixth Amendments, as well as Federal Rule of Criminal Procedure 11 and basic contract principles, entitle him to specific performance of the initial plea agreement. However,

"[a] plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which,

1979) (Hill, J., dissenting) ('I doubt that an agreement to withhold information from the sentencing judge would be lawful.').''

until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the Constitution. Only after ... [Billington] pleaded guilty was he convicted, and it is that conviction which gave rise to the deprivation of ... [his] liberty at issue here."

*Mabry v. Johnson,* 467 U.S. 504, 507–08, 104 S.Ct. 2543, 2546, 81 L.Ed.2d 437 (1984). It is now axiomatic "that the conditions for a valid plea 'presuppose fairness in securing agreement between an accused and a prosecutor.... The plea must, of course be voluntary and knowing and if it was induced by promises, the essence of those promises must in some way be made known.'" *Id.* at 509, 104 S.Ct. at 2547 (quoting *Santobello v. New York,* 404 U.S. 257, 261–62, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971)). *"[O]nly when it develops that the defendant was not fairly apprised of its consequences can his plea be challenged under the Due Process Clause."* [5] *Id.* (emphasis added). Thus, as a general rule "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York,* 404 U.S. at 262, 92 S.Ct. at 499. Further, even if a federal court holds that a defendant's plea was improperly induced, the Constitution neither compels nor requires "specific performance of a broken prosecutorial promise as the remedy for such a plea." *Mabry v. Johnson,* 467 U.S. at 510, 104 S.Ct. at 2548 n. 11. Rather, allowing the defendant to replead is "within the range of constitutionally appropriate remedies." *Id.* The Supreme Court has instructed that the appellate courts "leave to the discretion" of the trial court the "ultimate relief to which [such a defendant] is entitled." *Santobello v. New York,* 404 U.S. at 263, 92 S.Ct. at 499.

Billington asserts that his plea "rested in a significant degree on the promises of the prosecutor which were broken." App.Br.

at 23. Here, Billington is referring to the prosecution's October 3, 1986, Offer of Proof containing information inconsistent with the facts included in ¶ 11, i.e., that Billington supplied at least four to six kilograms of cocaine rather than the one kilogram of cocaine described in ¶ 11. However, the record clearly reveals that Billington was provided an opportunity (two-week period) to fully reconsider and withdraw his plea after he was fully apprised that the court would consider all relevant information regarding his offense severity including quantities of cocaine in excess of one kilogram at sentencing and not just the facts contained in ¶ 11 of the plea agreement. Further, we observe that at the time the initial plea agreement was executed, Billington was fully aware that ¶ 11 incompletely and inaccurately described the quantity of cocaine he was personally involved with while an active participant of the drug conspiracy. Thus, Billington could not have reasonably anticipated excluding from the record all other accurate and relevant information regarding his role in the conspiracy. The record establishes that the defendant not only ratified his initial guilty plea, but unequivocally refused to withdraw his plea of guilty to Count 4 during the two-week period of time the court allowed him to reconsider his plea. Lastly, Billington was well aware that the judge could impose a greater sentence than the six years recommended by the prosecution and was represented by competent counsel.

Billington's ultimate guilty "plea was thus in no sense the product of governmental deception; it rested on no 'unfulfilled promise' and fully satisfied the test for voluntariness and intelligence." *Mabry v. Johnson,* 467 U.S. at 510, 104 S.Ct. at 2548.

*"Thus, because it did not impair the voluntariness or intelligence of his guilty plea, ... [Billington's] inability to enforce the prosecutor's ... [initial promise] is without constitutional significance.* Neither is the question

---

**5.** Neither the Sixth Amendment nor Federal Rule of Criminal Procedure 11 nor contract

principles provide to the contrary.

whether the prosecutor was negligent or otherwise culpable in [the] first [instance].... The Due Process Clause is not a code of ethics for prosecutors; its concern is with the manner in which persons are deprived of their liberty. Here ... [Billington] was not deprived of his liberty in any fundamentally unfair way. [He] ... was fully aware of the likely consequences when he pleaded guilty; it is not unfair to expect him to live with those consequences now."

*Id.* at 510–11, 104 S.Ct. at 2548 (footnotes omitted) (emphasis added). We affirm the decision of the district court.[6]

---

**6.** We observe that the district court essentially refused to accept the defendant's September 5, 1986, guilty plea to the original plea agreement because it found that the plea agreement as then allegedly understood by Billington limited the government's duty to disclose all relevant information to the court or the probation department, even though Billington was fully aware that he delivered more than one kilogram of cocaine during the course of the conspiracy. On appeal, Billington has not contended that the district court's failure to accept his guilty plea to the initial "unenforceable" plea agreement constitutes an abuse of discretion. *See Santobello v. New York*, 404 U.S. at 262, 92 S.Ct. at 498 ("There is, of course, no absolute right to have a guilty plea accepted.... A court may reject a plea in exercise of sound judicial discretion." (citations omitted)). Thus, because Billington failed to allege that the court abused its discretion, we do not pass on the validity or enforceability of the original plea agreement since we need not determine whether the court's refusal to accept Billington's initial guilty plea constituted such an abuse. Further, if we were to decide the issue, we are of the opinion that the district court did not abuse its discretion because we agree that a plea agreement which restricts either the court's or the probation department's access to relevant information regarding the defendant is invalid. *See United States v. Cook*, 668 F.2d 317, 320 n. 4 (7th Cir.1982). Further, such a plea agreement is unenforceable since it is contrary to public policy and "abhorrent" to the underlying goal of the American judicial system. *See, e.g., United States v. Block*, 660 F.2d at 1091–92.